IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY KAREN ERBE, | ) | |
| Executrix of the Estate of Edward Erbe, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-113 |
| | ) | |
| v. | ) | Judge Terrence F. McVerry |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| BRIAN BILLETER, CIGNA GROUP | ) | |
| INSURANCE, and CONNECTICUT | ) | Doc. No. 6 |
| GENERAL LIFE INSURANCE CO., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P.
12(b)(6) (Doc. No. 6) be granted and the case be dismissed without prejudice as to Defendants
Connecticut General Life Insurance Company ("Connecticut General") and Brian Billeter.  It is
further recommended  that Plaintiff be granted leave to file an amended complaint to assert a claim
or claims under Section 502(a) of the Employee Retirement Income Security Act of 1974, as
amended, 29 U.S.C. § 1132(a) ("ERISA"), or federal common law claims under ERISA, as to
Defendants Connecticut General and Brian Billeter, within twenty (20) days from the date of the
Memorandum Order adopting this Report and Recommendation.  It is further recommended that
Defendants' Motion to Dismiss be granted and the case dismissed with prejudice as to Defendant
CIGNA Group Insurance.  It is further recommended that Defendants' motion to strike Plaintiff's
jury demand and to dismiss Plaintiff's request for punitive and/or  extra-contractual damages (Doc.
No. 6) be granted.

## II. REPORT

This case involves various state law claims arising out of the denial of a claim for accidental death and dismemberment insurance ("AD&D") benefits under a group life insurance policy provided as part of an employee benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA").  Plaintiff, Mary Karen Erbe, Executrix of the estate of her husband, Edward Erbe, originally instituted this action in the Court of Common Pleas of Westmoreland County, Pennsylvania on December 29, 2005, alleging state common law claims for breach of contract and fraud, as well as violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Act, 73 P.S. § 201 *et seq.*, and bad faith statute, 42 Pa.Cons.Stat. Ann. § 8371.  The complaint also includes a count for punitive damages and a request for a jury trial.  Defendants filed a timely notice of removal alleging Plaintiff's state law claims are premised on the denial and refusal to pay benefits under an employee welfare benefits plan, a cause of action governed exclusively and completely preempted by ERISA.  Therefore, Defendant has alleged this Court has removal jurisdiction on the basis of federal question jurisdiction under 28 U.S.C. §1331.[1]

This Court has original subject matter jurisdiction over the action pursuant to 29 U.S.C. §1132(e)(1) and 28 U.S.C. § 1331.[2]  Venue is proper in this District pursuant to 29 U.S.C. §1132(e)(2) since the alleged breach took place in this District.

---

[1]  In their notice of removal, Defendants raised a defense pursuant to ERISA which preempts the state law claims and therefore establishes this Court's removal jurisdiction.  *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66-67 (1987); *Joyce v. R.J.R. Nabisco Holdings Corp.,* 126 F.3d 166, 171 (3d Cir. 1997).

[2]  Initially, Plaintiff challenged this Court's subject matter jurisdiction in a Motion to Remand (Doc. No. 9).  However, after further consideration, Plaintiff withdrew her Motion to Remand (Doc. Nos. 20 & 21) and now appears to have conceded that ERISA governs and preempts her state law claims.  *See* Pl.'s Supp. Br. in Opp'n to Defs.' Mot. to Dismiss at 2.

Defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim because her purported claims under state law are preempted by ERISA. Defendants further maintain that the claims against Defendants Brian Billeter and CIGNA Insurance Group should be dismissed with prejudice as they are not proper parties in an ERISA action. Likewise, Defendants argue that Plaintiff's requests for punitive damages and a jury trial are precluded by ERISA and therefore should be stricken from the complaint.

Because it appears that Plaintiff now concedes, and the Court agrees, that her cause of action is governed and preempted by ERISA, the Court recommends that Defendants' motion to dismiss be granted and the case be dismissed without prejudice as to Defendants Connecticut General and Brian Billeter, and that Plaintiff be granted leave to file an amended complaint to assert a claim or claims under Section 502(a) of ERISA and/or federal common law as to Defendants Connecticut General and Brian Billeter.  It is further recommended that Defendants' Motion to Dismiss be granted and the case dismissed with prejudice as to Defendant CIGNA Group Insurance, and that Defendants' motion to strike Plaintiff's jury demand and request for punitive and/or extracontractual damages be granted.

A.      **Standard of Review - Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court is required to accept as true all allegations made in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the plaintiff.[3]  *See Blaw Knox Ret. Income Plan v. White*

---

3.  Nonetheless, a court is not required to credit bald assertions or legal conclusions in a complaint when deciding a motion to dismiss.  *Gaines v. Krawczyk,* 354 F.Supp. 2d 573, 576 (W.D.Pa. 2004) (citing *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997)).  Consistently, the courts have rejected "'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law' or 'sweeping legal conclusions cast in the form of factual allegations'"[,] in deciding a motion to dismiss pursuant to Rule 12(b)(6).  *Id.* (citing *Morse,* 132 F.3d at 906 n. 8 (citing Charles Allen Wright & Arthur R. Miller, *Federal*

*Consol. Indus. Inc.*, 998 F.2d 1185, 1188 (3d Cir. 1993); *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 871 (3d Cir. 1992).  The issue is not whether the plaintiff will ultimately prevail, but rather whether "plaintiff can prove any set of facts consistent with the averments of the complaint which would show the plaintiff is entitled to relief."  *See Gaines v. Krawczyk,* 354 F.Supp. 2d 573, 576 (W.D.Pa. 2004) (citing *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir. 1994)).  Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *See Port Auth. of New York and New Jersey v. Arcadian Corp.*, 189 F.3d 305, 311 (3d Cir. 1999) (quoting *Alexander v. Whitman*, 114 F.3d 1392, 1397 (3d Cir. 1997)); *see also Conley v. Gibson,* 355 U.S. 41, 45-46  (1957); *Langford v. City of Atlantic City,* 235 F.3d 845, 847 (3d Cir. 2000).  Thus, under this standard, a complaint will withstand a motion to dismiss if it gives the defendant adequate notice of the essential elements of a cause of action.  *Gaines,* 354 F.Supp. 2d at 576 (citing *Nami v. Fauver,* 82 F.3d 63, 66 (3d Cir. 1996)).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss.  *Pension Benefit Guar. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id*.  (citations omitted).  A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

---

*Practice and Procedure,* § 1357 (2d ed. 1997)); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir. 1996); *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993)).

**B.**     **Statement of Relevant Facts and Procedural History**

Because this action comes before the Court on a motion to dismiss, the Court must accept as true all of Plaintiff's allegations of fact and must view the facts in the light most favorable to her.

This case involves a claim made by Mary Karen Erbe, the widow and Executrix of the Estate of Edward Erbe, her husband, to enforce an oral settlement agreement allegedly entered into between Plaintiff's counsel and Defendant Brian Billeter with regard to accidental death and dismemberment benefits allegedly due under a group life insurance policy provided as part of Exxon Mobile Corporation's ("Exxon") retirement plan in which Edward Erbe was a participant.  (Compl. ¶ 5.) At the time of his death on July 21, 2003, Edward Erbe was employed by Exxon as a lubrication engineer and, as such, had just completed a gear inspection in the hot mill section at U.S. Steel Company's Mon Valley Works in McKeesport, Pennsylvania.  (Compl. ¶¶  6, 13-14.)  While leaving the plant, Mr. Erbe suffered a massive heart attack and died.[4]  (Compl. ¶ 15.)

Subsequently, Plaintiff filed a claim for AD&D benefits under the group life insurance policy provided by Defendant Connecticut General.  That claim was denied on January 23, 2004 because Connecticut General determined that Mr. Erbe died as a result of arteriosclerotic cardiovascular disease due to natural causes, rather than as a direct result of accidental bodily injury independent of all other causes.  (Ex. 1 to Compl.)  According to Connecticut General, the policy requires proof of an accidental bodily injury independent of all other causes for there to be a covered loss.  (*Id.*) Plaintiff appealed the denial of benefits through the appropriate administrative provisions in the

---

4.  Plaintiff contends that the conditions of the inspection combined to cause his fatal heart attack.  In particular, at the time of the inspection, the temperature in the plant was between 85 and 95 degrees, and Mr. Erbe wore a lowmar plastic fire-resistant type suit covering his entire body, as well as safety gloves, boots, glasses and a hard hat. (Compl. ¶¶ 14-15.)

insurance policy.  (Compl. ¶ 11.)

Simultaneously, Plaintiff filed a claim for compensation under the Pennsylvania Workers' Compensation Act.  (Compl. ¶ 12.)  While Plaintiff's worker's compensation claim was pending, counsel for Plaintiff had several discussions with Defendant Billeter, who was assigned to review the administrative appeal of the AD&D claim on behalf of Connecticut General.  (Compl. ¶¶ 16-17.) Plaintiff's counsel contends that he and Defendant Billeter agreed that the best course would be to await the outcome of the pending workers' compensation case before proceeding with the administrative appeal process, as the determination of coverage under the AD&D policy was in large part dependent upon whether the injury was determined to be "work-related" and whether workers' compensation benefits would be paid as a result of the injury.  (Compl. ¶ 18.)

Plaintiff was eventually awarded worker's compensation benefits and her counsel so notified Defendant Billeter of this fact in correspondence dated April 1, 2005, at which time counsel renewed his request on behalf of Plaintiff for payment of the AD&D benefits.  (Compl. ¶ 20.)  Between April 1, 2005 and July 13, 2005, Plaintiff's counsel sent letters to,  had telephonic discussions, and left messages with Defendant Billeter requesting a determination from Connecticut General as to Plaintiff's appeal of the denial of her claim for AD&D benefits.  (Compl. ¶¶ 21-26.)  On July 13, 2005, Defendant Billeter left a message with the Plaintiff's counsel's secretary, wherein he indicated that Connecticut General was reversing its decision and would be paying Plaintiff.  (Compl. ¶ 26.) Later that same day, Plaintiff's counsel and Billeter engaged in a telephone conversation wherein it is alleged that Billeter confirmed that Connecticut General agreed to pay the death benefit under the AD&D policy in the amount of  $710,024.00.  (Compl. ¶ 31.)  It is further alleged that Billeter discussed the method of payment and other details regarding issuance of the check.  (*Id.*)  In addition,

Billeter allegedly indicated that he would look into whether Plaintiff was entitled to statutory interest and would get back to Plaintiff's counsel.  (*Id.*)

On July 19, 2005, after he had not yet received an answer regarding the applicability of statutory interest, Plaintiff's counsel sent correspondence to Billeter confirming the oral settlement agreement reached on July 13, 2005. (Compl. ¶¶ 33-34.) On August 11, 2005, Billeter corresponded with Plaintiff's counsel, informing him that Plaintiff's administrative appeal of her claim for AD&D benefits was being denied and Connecticut General was maintaining its initial position that no basic and occupational accidental death benefits were due under the policy.  (Compl. ¶ 38; Ex. 5 to Compl.)    Subsequently, Plaintiff's counsel sought an explanation of the denial of this claim, requested documentation other than plan documents, and made repeated requests for payment of the claim, all of which were denied by Connecticut General.  (Compl. ¶¶ 39-41.)

Consequently, Plaintiff instituted the present action in the Court of Common Pleas of Westmoreland County, Pennsylvania, raising state common law claims of breach of contract and fraud, as well as claims for alleged violations of Pennsylvania's bad faith statute, 42 Pa.Cons.Stat.Ann. § 8371, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.* ("UTPCPL").  In this lawsuit, Plaintiff seeks to enforce the oral settlement agreement which she maintains was reached on July 13, 2005 between her counsel and Defendant Billeter.  In response, Defendants filed a timely Notice of Removal alleging Plaintiff's state law claims are premised on the denial and refusal to pay benefits under an employee welfare benefits plan, a cause of action governed and preempted by ERISA.

After removing this case to federal court, Defendants filed a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6).   That motion has been fully briefed and is now ripe for

disposition.

### C.     Analysis

#### 1.     Express Preemption of State Law Claims by ERISA

In enacting ERISA, Congress intended to:

> [P]rotect . . . the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b).  "ERISA comprehensively regulates, among other things, employee welfare benefit plans that, 'through the purchase of insurance or otherwise,' provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44 (1987) (quoting 29 U.S.C. § 1002(1)).

In addition, Congress included three provisions in the ERISA legislation specifically addressing its preemptive effect.  First, ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . .."  29 U.S.C. § 1144(a) ("preemption clause").  Whether a state law "relates to" an employee benefit plan has been construed by the Supreme Court according to "'its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Id.* at 47 (quoting *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97 (1983)).  Moreover, preemption is "not limited to 'state laws specifically designed to affect employee benefit plans.'" *Pilot Life,* 481 U.S. at 47-48 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98 (1983)).  For purposes of the

8

preemption clause, "[t]he term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State."  29 U.S.C. § 1144(c)(1).

This preemption clause is not without limits, however, as it is subject to the following clause, which provides: "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A) ("saving clause").  The final part of this preemption trilogy is the deemer clause, which states: "Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, or investment companies."  29 U.S.C. § 1144(b)(2)(B) ("deemer clause").  Essentially, the above trilogy can be summarized as follows:  "If a state law 'relate[s] to . . . employee benefit plan[s],' it is pre-empted. § 514(a).  The saving clause excepts from the pre-emption clause laws that 'regulat[e] insurance.' § 514(b)(2)(A).  The deemer clause makes clear that a state law that 'purport[s] to regulate insurance' cannot deem an employee benefit plan to be an insurance company.  § 514(b)(2)(B)."  *Pilot Life,* 481 U.S. at 45.

In the instant matter, the state common law claims for breach of contract and fraud raised in Plaintiff's complaint undoubtedly satisfy the criteria for express preemption under Section 1144(a).  Although characterized as claims for breach of contract and fraud, neither of these claims can be decided without reference to the terms of the group life insurance policy.  Indeed, the Supreme Court has held that claims for breach of contract and fraud which were based on the alleged improper processing of a claim for benefits under an employee benefit plan satisfy the criteria for express preemption under Section 1144(a).  *Pilot Life,* 481 U.S. at 48 (ERISA preempted common law

9

claims of tortious breach of contract, breach of fiduciary duties, and fraud in the inducement); *see also Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62-63 (1987) (common law contract and tort claims preempted by ERISA); *Berger v. Edgewater Steel Co.,* 911 F.2d 911, 923 (3d Cir. 1990) (state common law misrepresentation claims were preempted because said claims related to an employee benefit plan); Jayne E. Zanglein and Susan J. Stabile, *ERISA Litigation,* Chapt. 5, Part VI, Section D, at 147-48 (2d ed. 2005) (hereinafter "*ERISA Litigation*") (citations omitted).  Plaintiff concedes this point as well and requests leave of court to file an amended complaint raising claims under 29 U.S.C. § 1132(a)(1)(B) and federal common law.  (Pl.'s Supp. Br. in Opp'n to Defs.' Mot. to Dismiss at 2.)  Moreover, the saving clause does not apply to except Plaintiff's common law claims for breach of contract and fraud from express preemption under Section 1144(a).  Neither of these common law claims attempts to regulate insurance, banking or securities, and therefore the saving clause is not even implicated.  Accordingly, the Court finds Plaintiff's common law claims for breach of contract and fraud are expressly preempted by ERISA and therefore recommends that these claims be dismissed.

With regard to Plaintiff's claims alleging violations of state statutes, the Court finds these claims are likewise preempted by ERISA.  The courts have generally held that statutory state law claims that relate to an employee benefit plan fall within the express preemption clause of Section 1144(a).[5]  Therefore, these claims are subject to dismissal unless the saving clause applies to except

---

5.  Numerous district courts in the Third Circuit have held that claims alleging violations of Pennsylvania's insurer bad faith statute and Unfair Trade Practices and Consumer Protections Law ("UTPCPL") are preempted by ERISA when they related to an employee benefit plan.  *See, e.g., Murphy v. Metropolitan Life Ins. Co.,* 152 F.Supp. 2d 755, (E.D.Pa. 2001) (citing *Pilot Life, supra*) (other citations omitted); *Gilbertson v. UNUM Life Ins. Co. of Am.,* No. Civ. A. 03-5732, 2005 WL 1484555, *3 (E.D.Pa. June 21, 2005) (citations omitted); *Miller v. Aetna Healthcare,* No. 01-2443, 2001 WL 1609681, *1 (E.D.Pa. Dec. 12, 2001) (citations omitted); *Clancy v. Ins. Co. of Am.,* Civ. A. No. 96-1053, 1996 WL 543939, * (E.D.Pa. Sept. 24, 1996).  Here Plaintiff's bad faith statute and UTPCPL claims relate to the denial of her claim for AD&D benefits under the Exxon employee benefit plan and therefore fall within the

them from preemption.

Pennsylvania's UTPCPL and insurer bad faith claims can be disposed of quickly. The saving clause is not implicated with regard to Plaintiff's claim under the UTPCPL as that statute is not specifically directed towards an industry to which the exception applies, *i.e.*, the insurance, banking or securities industry. *See Clancy,* 1996 WL 543939, at *3 (holding that the UTPCPL does not regulate insurance as required by the exception stated in section 1144(b)(2)(A) as that statute was not specifically directed to insurance industry and therefore, plaintiff's UTPCPL claim was not saved from preemption).[6] In addition, the Court of Appeals has already considered whether Pennsylvania's insurer bad faith statute is a law regulating insurance thereby excepting such claims from preemption under Section 1144(b)(2)(A). Applying the two-part test enunciated in *Kentucky Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329 (2003), the Court of Appeals concluded that Pennsylvania's bad faith statute is not a law regulating insurance because that statute does not substantially affect the risk-pooling arrangement between the insurer and insured. *See Barber v. UNUM Life Ins. Co.,* 383 F.3d 134, 144 (3d Cir. 2004) (citing *Kentucky Ass'n of Health Plans,* 538 U.S. at 341-42); *ERISA Litigation,* Chapt. 5, § IV.B. at 133 (citations omitted). Therefore, since the saving clause does not apply to the Pennsylvania insurer bad faith statute, Plaintiff's claim alleging a violation of this statute is expressly preempted by ERISA and must be dismissed.

Accordingly, because Plaintiff's claims alleging violations of Pennsylvania's bad faith statute and UTPCPL relate to an employee benefit plan and are not saved from preemption by the saving

---

express preemption clause of 29 U.S.C. § 1144(a).

6.  Although the district court in *Clancy* applied the McCarren-Ferguson test to determine whether the UTPCPL regulated insurance for purposes of the ERISA saving clause, which has since been replaced by the two-part test enunciated in *Kentucky Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329, 341-42 (2003), both tests contain the requirement that the statute in question be "specifically directed toward entities engaged in insurance."

clause, the Court finds these claims are expressly preempted by ERISA and should be dismissed.

### 2.      Plaintiff's Requests for Punitive Damages and a Jury Trial

Defendants submit that Plaintiff's request for punitive damages (Count V) and for a jury trial should be stricken from the complaint as neither is permitted under ERISA. Defendants also maintain that Plaintiff should not be allowed to include a request for punitive damages and a jury trial in her amended complaint. Plaintiff appears to concede as much in her supplemental brief in opposition to Defendants' motion to dismiss.

It is well established that punitive and extra-contractual damages are not available remedies under ERISA. *See, e.g., Aetna Health Inc. v. Davila,* 542 U.S. 200, 215 (2004) (citing *Pilot Life,* 481 U.S. at 43); *Mass. Mut. Life Ins. Co. v. Russel,* 473 U.S. 134, 147-48 (1985); *Barber,* 383 F.3d at 140-41; *DeFelice v. Aetna U.S. Healthcare,* 346 F.3d 442, 458 (3d Cir. 2003) (citation omitted); *Kemmerer v. ICI Ams., Inc.,* 70 F.3d 281, 289 (3d Cir. 1995); *Pane v. RCA Corp.,* 868 F.2d 631, 635 & n.2 (3d Cir. 1989).

With regard to a plaintiff's right to a jury trial in ERISA actions, the Court of Appeals has held that actions to recover benefits under 29 U.S.C. § 1132(a)(1)(B) are essentially equitable in nature and therefore a plaintiff is not entitled to a jury trial. *Pane,* 868 F.2d at 636-37 (citations omitted); *Cox v. Keystone Carbon Co.,* 894 F.2d 647, 649-50 (3d Cir. 1990) (citations omitted). However, Plaintiff has indicated that she intends to plead federal common law claims under ERISA, and therefore, the Court must consider whether she might be entitled to a jury trial on those claims. The Supreme Court has employed a two-part analysis in determining whether claims are legal or equitable in nature and therefore, whether a plaintiff is entitled to a jury trial: (1) a historical determination is made which "considers whether the modern statutory cause of action most nearly

resembles historical actions in law or equity," and (2) "an examination of the nature of the relief sought" is made. *ERISA Litigation,* Chapt. 16, Part III, Section A, at 410 (quoting *Teamsters Local 391 v. Terry,* 494 U.S. 558, 565 (1990); *Tull v. United States,* 481 U.S. 412, 417-18 (1987)).   The second prong of the above test is considered as determinative. *Id.* (citing *Teamsters Local 391,* 494 U.S. at 573).   The remedies available under the federal common law of ERISA are essentially equitable in nature.[7]   In addition, the two federal common law claims Plaintiff intends to assert in her amended complaint seek equitable relief–enforcement of the alleged oral settlement agreement and equitable estoppel.  Therefore, the right to a jury trial on these proposed claims also appears to be denied.

Accordingly, the Court recommends that Defendants' motion to strike the request for punitive damages (Count V) and for a jury trial be stricken from the complaint, and that Plaintiff be precluded from asserting such requests in her amended complaint.

### 3.      Leave to File an Amended Complaint

Plaintiff now concedes that her state law claims are preempted by ERISA and requests leave to file an amended complaint to aver both statutory and federal common law claims under ERISA. Defendants do not object to Plaintiff's filing an amended complaint but appear to ask this Court to limit any amendment to a claim under 29 U.S.C. § 1132(a)(1)(B).  The Court does not agree that Plaintiff's amended complaint should be so limited.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading

---

7.  The equitable remedies granted under the federal common law of ERISA generally include restitution, reinstatement, back pay and front pay, prejudgment interest, constructive trust, reformation of the plan, recovery for negative unjust enrichment (*i.e.,* recoupment of the amount saved by the improper denial of benefits), and rescission as a federal common law remedy for contracts entered into under a false representation of health.  *See ERISA Litigation*, Chapt. 8, Part IV, at 258 (citations omitted).

"shall be freely given when justice so requires."  In *Foman v. Davis,* the Supreme Court delineated the grounds that would justify denying leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment".  *Foman v. Davis,* 371 U.S. 178, 182 (1962).  The grant or denial of leave to amend is within the sound discretion of the district court; however, failure to provide a reason for denying leave to amend is considered an abuse of that discretion.  *Id.*; *see also In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1434 (citing *Foman, supra*).

None of the grounds justifying denial of leave to amend is present in this case. Moreover, Plaintiff does not technically need leave of court to amend her complaint.[8]  *See* Fed.R.Civ.P. 15(a). In any event, in her supplemental brief in opposition to Defendants' motion to dismiss, Plaintiff asserts several types of claims that she intends to include in an amended complaint if allowed leave to amend her complaint. At this time, the Court will not opine as to the viability of Plaintiff's proposed theories of liability under ERISA and federal common law, as the Court is precluded from rendering advisory opinions.  Nonetheless, it certainly appears that the Court of Appeals has recognized federal common law claims for equitable estoppel and breach of contract claim under ERISA when appropriate.  *See, e.g., Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226, 235-36 (3d Cir. 1994) (citations omitted) (to succeed on equitable estoppel claim under ERISA, plaintiff must demonstrate a material representation, reasonable and detrimental reliance upon the

---

8.  Although generally a plaintiff would attach a copy of the proposed amended complaint with a motion for leave to amend, to expedite this matter the Court will allow Plaintiff leave to amend as she may amend a pleading once as matter of course before a responsive pleading has been filed.  Fed.R.Civ.P. 15(a).  Since Defendants have not yet filed an Answer in this matter, Plaintiff does not need leave of court to file an amended complaint.

representation, and extraordinary circumstances); *Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found.,* 334 F.3d 365, 381 (3d Cir. 2003) (quoting *Feifer v. Prudential Ins. Co. of Am.,* 306 F.3d 1202, 1210 (2d Cir. 2002)) (in construing plan terms for purposes of claims under §1132(a)(1)(B), the courts have "'appl[ied] a federal common law of contract, informed both by general principles of contract law and by ERISA's purposes as manifested in its specific provisions.'"); *Kemmerer,* 70 F.3d at 287 (citing *Barrowclough v. Kidder, Peabody & Co.,* 752 F.2d 923, 935-36 (3d Cir. 1985)) (holding court has repeatedly considered claims for breach of contract of an employee benefit plan brought by participants that are based on the terms of or rights under a plan and in such circumstances, has applied federal common law of contracts to such disputes).

With regard to settlement agreements, a number of courts have applied the federal common law of contracts in determining whether to enforce settlement agreements purporting to settle claims for benefits under a plan governed by ERISA.  Specifically, courts have applied federal common law in the context of written settlement agreements with regard to severance benefits due under a top hat plan.  *See, e.g., Koenig v. Automatic Data Processing,* 156 Fed. Appx. 461, 467, 2005 WL 2891740, *5-6 (3d Cir. Nov. 3, 2005) (citing *Bock v. Computer Assocs. Int'l, Inc.,* 257 F.3d 700, 704 (7th Cir. 2001) ("It has been uniformly held that general principles of contract law-under the federal common law that guides interpretation of ERISA plans-are to be applied to the interpretation of the language of such severance agreements."); *In re New Valley Corp.,* 89 F.3d 143, 149 (3d Cir. 1996) (holding top hat plans are governed by federal common law of contract)) (other citations omitted).  In addition, one federal district court in Indiana has enforced an oral settlement agreement between a multi-employer benefit fund and an employer regarding delinquent contributions to the fund.  *See*

*John Boettcher Sewer & Excavating Co., Ltd. v. Midwest Operating Eng'rs Welfare Fund,* 803 F.Supp. 1420, 1426 (N.D. Ind. 1992).   Also, a federal district court in New York, applying the federal common law of contracts, enforced an oral settlement agreement between an employee benefit fund and employer arising from an ERISA lawsuit involving a dispute as to whether the employer owed contributions to the fund.   *See Bd. of Trustees of the Sheet Metal Workers Local Union No. 137 Ins. Annuity & Apprenticeship Training Funds v. VIC Construction Corp.,* 825 F.Supp. 463, 466 (E.D.N.Y. 1993) ("*VIC Construction*").[9]   Defendants attempt to distinguish the district courts' opinions in *John Boettcher Sewer & Excavating Co.* and *VIC Construction*, claiming that the facts of this case distinguish it from those cases.   The Court finds it is premature to rule on this argument and therefore will defer ruling on the merits of this argument until Plaintiff has actually asserted a federal common law claim to enforce the alleged settlement agreement in an amended complaint.

Thus, the authority cited above does not appear to foreclose the inclusion of federal common law claims for equitable estoppel and enforcement of a settlement agreement in the amended complaint at this time.   Certainly, Plaintiff should be given an opportunity to at least plead such claims. The adequacy of any such claims may, of course, be challenged in a subsequent motion to dismiss and/or answer to the amended complaint.   Accordingly, the Court will allow Plaintiff leave to file an amended complaint to raise federal claims based on a specific statutory violation of ERISA

---

9.  In *VIC Construction*, the oral settlement agreement was made by the president of the employer corporation, who acted with actual authority to bind the corporation, and under oath during a deposition.  *Id.* at 464.  Unlike *VIC Construction,* here the alleged oral settlement agreement occurred at the administrative review level, and was not made under oath.  Moreover, the complaint here fails to allege any facts to support a finding that Defendant Billeter, a claims administrator for Connecticut General, acted as a fiduciary or with actual or apparent authority to bind Connecticut General.  Therefore, although there appears to be some authority, albeit not controlling, for enforcing oral settlement agreements resolving ERISA disputes, Plaintiff must, at a minimum, allege sufficient facts to establish an enforceable settlement agreement under federal common law.

and/or a violation of federal common law arising under ERISA. Defendants will have an opportunity to raise any and all legal arguments and defenses to the amended complaint in a subsequent motion to dismiss and/or answer to the amended complaint.

### 4.    Dismissal of Defendant Billeter as an Improper Party

Defendants submit that Defendant Billeter should be dismissed as a party to Plaintiff's complaint, or alternatively, should not be named as a party in the amended complaint asserting an ERISA claim because Billeter is not a proper party in a suit for benefits under 29 U.S.C. § 1132(a)(1)(B). In response, Plaintiff disagrees, asserting that if allowed to amend the complaint, she will assert facts to establish that Defendant Billeter acted as a fiduciary.

While it is true that in a recovery of benefits claim under 29 U.S.C. § 1132(a)(1)(B), only the plan and administrators and trustees of the plan may be sued in their official capacities, Plaintiff intends to present claims on bases other than Section 1132(a)(1)(B). In addition, ERISA does allow claims against fiduciaries, and Plaintiff submits that she intends to allege facts in the amended complaint to show that Defendant Billeter acted as a fiduciary. Because it cannot be said that Plaintiff can allege no set of facts to establish a claim against Defendant Billeter for which relief may be granted, futility of amendment has not been established. Therefore, Plaintiff should be given the opportunity to plead any facts that may establish liability against Defendant Billeter in a recognized capacity under either the statutory provisions of ERISA or federal common law under ERISA.

Accordingly, the Court recommends that Defendants' motion to dismiss Defendant Billeter as an improper party should be granted as to the complaint currently of record. However, the Court further recommends that Plaintiff should not be precluded from naming Billeter as a party in the amended complaint provided there is a legal and factual basis for doing so, and the factual basis is

adequately set forth in the amended complaint.

**5.**     **Dismissal of Defendant CIGNA
Group Insurance as Improper Party**

Defendants also seek the dismissal of CIGNA Group Insurance as an improper party on the

basis that the term "CIGNA Group Insurance" is a service mark, and not a corporate entity or

otherwise considered a "person" who may be held liable under 29 U.S.C. § 1132(a)(1)(B).

Defendants ask this Court to take judicial notice that "CIGNA Group Insurance" is a service mark

registered in the United States Patent and Trademark Office under Registration No. 2,563,544.

Thus, Defendants maintain that CIGNA Group Insurance should be dismissed from the present

complaint and should not be named as a party defendant in any amended complaint asserting causes

of action under ERISA that is filed by Plaintiff.  Plaintiff does not appear to oppose this aspect of

Defendants' motion to dismiss.

Since it appears that CIGNA Group Insurance is, in fact, a registered service mark, the

Court finds it is not a legal entity capable of suing or being sued.  *See Bishop v. Long Term

Disability Income Plan of SAP Am., Inc.,* No. 04-0031, 2006 WL 521506, at *5 (N.D. Okla. Mar.

2, 2006) (dismissing CIGNA on the basis that it is a service mark and not a legal entity capable

of suing or being sued); *Heslin-Kim v. CIGNA Group Insurance,* 377 F.Supp.2d 527, 529 n. 1

(D.S.C. 2005) (noting complaint was properly amended to replace CIGNA Group Insurance, a

service mark and not a legal entity, with Connecticut General Life Insurance Company, the legal

entity that issued the disputed policy).  Accordingly, the Court recommends that CIGNA Group

Insurance be dismissed with prejudice in this action.

## III.    CONCLUSION

For the reasons set forth above, it is recommended that the Motion to Dismiss for Failure to State a Claim under Fed.R.Civ.P. 12(b)(6) (Doc. No. 6) filed by Defendants be granted and the case be dismissed without prejudice as to Defendants Connecticut General Life Insurance Company and Brian Billeter.  It is further recommended  that Plaintiff be granted leave to file an amended complaint to assert a claim or claims under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1132(a), and/or federal common law claims under ERISA, as to Defendants Connecticut General and Brian Billeter, within twenty (20) days from the date of the Memorandum Order adopting this Report and Recommendation.  It is further recommended that Defendants' Motion to Dismiss be granted and the case dismissed with prejudice as to Defendant CIGNA Group Insurance.  It is further recommended that Defendants' motion to strike Plaintiff's jury demand and to dismiss Plaintiff's request for punitive and/or extracontractual damages (Doc. No. 6) be granted.

In accordance with the Magistrates Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Dated:  October 16, 2006                                    By the Court:


    s/Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

cc:     Hon. Terrence F. McVerry
        United States District Judge

        All Counsel of Record
        *Via Electronic Mail*