IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY KAREN ERBE, | ) | |
| Executrix of the Estate of Edward Erbe, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-113 |
| | ) | |
| v. | ) | Judge Terrence F. McVerry |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| BRIAN BILLETER, et al., | ) | |
| | ) | Doc. No. 28 |
| Defendants. | ) | |
| | ) | |
| | ) | |

## OPINION

McVERRY, J.

Currently before the Court for disposition is Defendants' Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) (Doc. No. 28).  In accordance with this Court's Order dated November 13, 2006 (Doc. No. 25) granting Defendant's Motion to Dismiss and granting Plaintiff's Motion to File an Amended Complaint, Plaintiff filed an amended complaint asserting claims for violations of Section 502(a) and (c) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), codified at 29 U.S.C. §§ 1132(a) and (c), as well as a federal common law claim for breach of contract.  Defendants now move to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6).  For the reasons that follow, the Court will grant Defendants Motion to Dismiss (Doc. No. 28) as to Defendant Brian Billeter on all Counts, and will grant said motion as to Defendant Connecticut General Life Insurance Company on Count I as to Plaintiff's claim for relief under 29 U.S.C. § 1132(a)(1)(A), and on Counts II, III and IV.  In all other respects, Defendants' motion will be denied.

I.    **FACTS**

Because this action comes before the Court on a motion to dismiss, the Court must accept as true all of Plaintiff's allegations of fact and must view the facts in the light most favorable to her.

This case arises out of an alleged oral settlement agreement between Plaintiff's counsel and Defendant Brian Billeter on behalf of Defendant Connecticut General Life Insurance Company ("Connecticut General") with regard to accidental death benefits allegedly due under a group accidental death and dismemberment insurance policy provided by Connecticut General as part of the Exxon Mobile Life Insurance Plan ("Plan") in which Edward Erbe was a participant.[1]  The Summary Plan Description dated January 2000 ("SPD") provides that the Plan Sponsor is Exxon Mobile Corporation ("Exxon").  (Ex. A to Defs.' Mot. to Dismiss at CGLIC - 000036.)  The SPD further provides that administration of the Plan shall be handled by the Administrator - Benefits, who is defined as the Policy, Benefits and Planning Division Manager of Exxon, and by the Administrator- Finance, who is defined as the Treasurer of Exxon.  (*Id.* at CGLIC - 000037.)  With regard to claims for benefits, the SPD designates the CIGNA Claims Office in Pittsburgh, Pennsylvania, as the entity to which all claims for basic life coverage and basic accidental death and dismemberment insurance shall be submitted in writing.  (*Id.* at CGLIC - 000038.)  The SPD further instructs that if a claim is denied in whole or in part, the claimant shall receive written notice of the decision, and that denial of the claim may be appealed in writing to the Administrator - Benefits within 90 days.  (*Id.* at CGLIC - 000038-39.)  The SPD states that the decision on the appeal will be issued by the Administrator - Benefits.  (*Id.* at CGLIC - 000039.)

---

1. The facts surrounding Mr. Erbe's demise have been fully set forth in the Magistrate Judge's Report and Recommendation (Doc. No. 24) adopted as the opinion of this Court and therefore will not be reiterated here.

The parties have not supplied the "Plan", however, it appears that the Exxon Mobile Corporation Life and Accidental Death & Dismemberment Policy between Exxon and Connecticut General ("Policy") fulfills that purpose.  (Defs.' Ex. B attached to Mot. to Dismiss.)  The Polcy does not contain any express provisions regarding the identity of the Plan Administrator(s) or fiduciaries, or the extent of any discretionary authority or control delegated to either the Plan Administrator(s) or fiduciaries.  In addition, the Policy includes an integration clause, which provides that the Plan documents consist of the insurance policy, including rider certificates, plus any applications submitted by Exxon or a beneficiary.  (*Id.* at CGLIC - 000077.)  The Policy also provides that any amendments to the contract shall be agreed to by both parties in writing.  (*Id.*)

The relevant facts are as follows.  After Mr. Erbe's death, Plaintiff, Mary Karen Erbe, as Edward Erbe's widow and executrix of his estate, filed a claim for basic accidental death benefits under the Policy.  Connecticut General denied that claim on January 23, 2004.  (Am. Compl. ¶¶ 37, 60, & Ex. 4 attached thereto.)  In the denial letter from Connecticut General, Plaintiff was advised of her right to appeal that determination and request an administrative review of the denial of her claim.  (Am. Compl. ¶ 60; Ex. 4 at 2-3.)  Plaintiff filed a timely appeal of the denial of her claim as directed by Connecticut General in the January 23, 2004 denial letter.  (Am. Compl. ¶¶ 38, 61.)  Connecticut General acknowledged receipt of Plaintiff's appeal and advised her that it was being referred to one of its claims examiners, Defendant Brian Billeter.  (Am. Compl. ¶¶ 34, 62; Ex. 8 attached thereto.)  During the administrative review and appeal process,  counsel for Plaintiff had several discussions with Defendant Billeter, including one in which  he and Defendant Billeter agreed that Connecticut General's final decision on Plaintiff's appeal of the denial of her claim for accidental death benefits should be postponed until a determination was issued in Plaintiff's

3

workers' compensation case, as the determination of coverage under Policy was in large part dependent upon whether the injury was determined to be "work-related" and whether workers' compensation benefits would be paid as a result of the injury.[2]  (Am. Compl. ¶ 73.)

While the administrative appeal was pending, Plaintiff's counsel made a formal request to Connecticut General for "numerous items of information including any and all plan documents applicable to [Plaintiff's] claim" for accidental death benefits.  (Am. Compl. ¶ 34; Ex. 1 attached thereto.)  In response, Defendant Billeter allegedly forwarded a copy of the insurance policy and claim file, but did not provide, at that time, any Plan documents or the SPD.  (Am. Compl. ¶ 34.)

On July 13, 2005, Defendant Billeter called and left a message for Plaintiff's counsel, at which time it is alleged Billeter informed counsel's secretary that "CIGNA" was reversing its decision and would be paying Plaintiff.  (Am. Compl. ¶¶ 82-83.)  Later that same day, Plaintiff's counsel and Billeter engaged in a telephone conversation wherein it is alleged that Billeter confirmed that "CIGNA" agreed to pay the death benefit under the AD&D policy in the amount of $710,024.00.  (Am. Compl. ¶ 87.)  It is further alleged that Billeter discussed the method of payment and other details regarding issuance of the check.  (*Id.*)  In addition, Billeter allegedly indicated that he would look into whether Plaintiff was entitled to statutory interest and would get back to Plaintiff's counsel.  (*Id.*)

On July 19, 2005, after not receiving any communication from Defendant Billeter, Plaintiff's

---

2.  Plaintiff was eventually awarded worker's compensation benefits and her counsel so notified Defendant Billeter of this fact in correspondence dated April 1, 2005, at which time counsel renewed his request on behalf of Plaintiff for payment of the accidental death benefits.  (Am. Compl. ¶ 77.)  Between April 1, 2005 and July 13, 2005, Plaintiff's counsel sent letters to,  had telephonic discussions, and left messages with Defendant Billeter requesting a determination from Connecticut General as to Plaintiff's appeal of the denial of her claim for accidental death benefits.  (Am. Compl. ¶¶ 78-81.)

counsel corresponded with Billeter by facsimile, confirming the oral settlement agreement allegedly reached on July 13, 2005.  (Am. Compl. ¶¶ 90.)  On August 11, 2005, Billeter corresponded in writing, informing Plaintiff's counsel that Plaintiff's administrative appeal of her claim for accidental death benefits was being denied and Connecticut General was maintaining its initial position that "no basic and occupational accidental death benefits [were] due" under the policy.  (Am. Compl. ¶ 95; Ex. 5 attached thereto.)  Thereafter, Plaintiff's counsel attempted to contact Defendant Billeter on numerous occasions without success, and even faxed documents regarding the alleged oral settlement agreement to Billeter's supervisor without any response. (Am. Compl. ¶ 69.) On October 21, 2005, the SPD was provided to Plaintiff's counsel, well after the issuance date the final administrative determination.  (Am. Compl. ¶ 34.)

Consequently, Plaintiff instituted the present action on December 29, 2005 in state court, and Defendants subsequently removed it to this federal district court based on federal question jurisdiction.   In her amended complaint, Plaintiff seeks to enforce the alleged oral settlement agreement under federal common law of contract (Count II).  In addition, in Count I, Plaintiff asserts a claim for recovery of basic accidental death benefits allegedly due under the Plan pursuant to 29 U.S.C. §1132(a)(1)(B), and a claim for statutory damages under 29 U.S.C. §§ 1132(a)(1)(A) and 1132(c)(1)(B) for Defendants' alleged failure to comply with her request for Plan documents and the SPD in a timely fashion as required by section 1132(c)(1)(B).[3]  In Count III, Plaintiff asserts a claim for equitable estoppel under 29 U.S.C. § 1132(a)(3).  Finally, in Count IV, Plaintiff asserts a claim

---

3.  Although the amended complaint indicates that the claims in Count I are brought pursuant to "Section 502(a) of ERISA" (codified at 29 U.S.C. § 1132(a)), it is clear that based on the allegations contained in the amended complaint, the specific sections implicated are 29 U.S.C. §§ 1132(a)(1)(A) and (B), and 1132(c)(1)(B).

for breach of fiduciary duty under ERISA against both Defendants arising out of material misrepresentations allegedly made to her by Defendants in a fiduciary capacity.[4]

In response, Defendants moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).  That motion has been fully briefed and is now ripe for disposition.

## II.    STANDARD OF REVIEW - MOTION TO DISMISS

A motion to dismiss is an appropriate means of challenging the legal sufficiency of the Complaint. *See, e.g., Sturm v. Clark*, 835 F.2d 1009, 111 (3d Cir. 1987). It should be granted where the Complaint fails to set forth facts stating a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (May 21, 2007).  In considering a motion to dismiss, the Court accepts as true the factual allegations made in the complaint and draws reasonable inferences in favor of the non-moving party.[5] *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004).  It may address documents attached to or referenced in the Complaint and those attached as exhibits to the motion to dismiss if they are integral to plaintiff's claims.  *See Pension Benefit Guar. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *In re Burlington Coat*

---

4.  In the amended complaint, Plaintiff does not indicate which sections of ERISA are implicated in Count IV.  This Court's review of the statute indicates that the only provisions of ERISA that are potentially applicable to Plaintiff's breach of fiduciary duty claim are 29 U.S.C. § 1109 and 1132(a)(3)(B).

5.  Nonetheless, a court is not required to credit bald assertions or legal conclusions in a complaint when deciding a motion to dismiss.  *Gaines v. Krawczyk,* 354 F.Supp. 2d 573, 576 (W.D.Pa. 2004) (citing *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997)).  Consistently, the courts have rejected "'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law' or 'sweeping legal conclusions cast in the form of factual allegations'"[,] in deciding a motion to dismiss pursuant to Rule 12(b)(6).  *Id.* (citing *Morse,* 132 F.3d at 906 n. 8 (citing Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1357 (2d ed. 1997)); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir. 1996); *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993)).

*Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.   ANALYSIS

### A.   Claims Agains Defendant Billeter

In order for Plaintiff to maintain a claim against Defendant Billeter under ERISA, she must establish that he is a fiduciary. Section 3(21)(A) of ERISA provides the following definition of a fiduciary:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of [title 29].

29 U.S.C. § 1002(21)(A).[6] ERISA further provides that a corporation may be a "person" under the definition of fiduciary. 29 U.S.C. § 1002(9). It is well established that a determination about whether a claimant is entitled to benefits under the terms of the plan documents is a fiduciary act connected to plan administration. *Aetna Health Inc. v. Davila,* 542 U.S. 200, 219-20 (2004) (citing *Varity Corp. v. Howe,* 516 U.S. 489, 512 (1996)). Fiduciary status does not simply attach to any administrative activity, but rather, only to the person who has final authority to authorize or disallow a claim for benefits under the plan. *Varity,* 516 U.S. at 512 (citing Dep't of Labor Interpretative Bulletin § 75-8, 29 C.F.R. § 2509.75-8 (1995)). In addition, such person must be acting as a fiduciary when determining a claim for benefits. *Davila,* 542 U.S. at 220.

In the case at bar, Defendants submit that the claims against Defendant Billeter should be

---

6. Section 1105(c)(1)(B) provides in relevant part: "[The plan document] may expressly provide for procedures . . . for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities. . . ." 29 U.S.C. § 1105(c)(1)(B).

dismissed because the allegations in the amended complaint do not establish that he is a fiduciary under ERISA.  In support of this argument, Defendants rely primarily on *Confer v. Custom Eng'g Co.,* 952 F.2d 34 (3d Cir. 1991).  In *Confer,* a participant in an employee health benefit plan brought suit in federal court against his employer, who was the plan administrator and fiduciary, as well as against the officers of the employer corporation, alleging breach of fiduciary duty in denying his claim.  The plaintiff in that case also sued the plan's third-party administrator, who was delegated the day-to-day administrative responsibilities for the plan.  The Court of Appeals affirmed the district court's grant of summary judgment in favor of the corporate officers, holding that "when an ERISA plan names a corporation as a fiduciary, the officers who exercise discretion on behalf of that corporation are not fiduciaries within the meaning of section 3(21)(A)(iii), unless it can be shown that these officers have *individual* discretionary roles as to plan administration." *Id.* at 37.  The Court of Appeals went on to explain that, "[f]or example, if the plan designates an officer as plan administrator or if, pursuant to 29 U.S.C. § 1105(c)(1)(B), the corporation delegates some of its fiduciary responsibilities to an officer, then the designated individual would be a fiduciary under section 3(21)(A)(iii)." *Id.* (footnote omitted).

Of particular importance to this case is the Court of Appeals' ruling as to the third-party administrator.  The *Confer* court found that the third-party administrator was not a fiduciary with regard to its day-to-day administration, and therefore, was not responsible for wrongfully denying benefits to the plaintiff.  *Id.* at 39.  In reaching this conclusion, the Court of Appeals opined:

> Since discretionary authority, responsibility or control is a prerequisite to fiduciary status, it follows that persons who perform purely ministerial tasks, such as claims processing and calculation, cannot be fiduciaries because they do not have discretionary roles. *See* Dep't of Labor Interpretative Bulletin, 75-8, 29 C.F.R. § 2509.75-

> 8 (1991). [The third-party administrator] had no discretion to deny or
> allow Confer's claim. [It] had an obligation to follow the written plan
> instrument and to follow instructions of the [plan] administrator.

*Id.*  Moreover, the Court of Appeals found no basis in the plan documents or anywhere else in the record to support Confer's assertion that the third-party administrator exercised discretionary authority or control.  *Id.*

Also relevant here is the Third Circuit's decision in *Taylor v. Peoples Natural Gas Co.,* 49 F.3d 982 (3d Cir. 1995).  In that case, the Court of Appeals addressed the standards under which an individual employee may be held liable as an ERISA fiduciary:

> [I]ndividuals, whose activities are limited "within a framework of
> policies, interpretations, rules, practices, and procedures made by
> other persons, fiduciaries with respect to the plan," cannot be
> individually liable as fiduciaries under ERISA, since they fail to
> exercise "the discretionary authority or discretionary control" over the
> plan required for the direct imposition of fiduciary liability.  *See*
> ERISA § 3(21)(A), 29 U.S.C.A. §1002(21)(A) (West Supp. 1993).

49 F.3d at 987 (quoting Dep't of Labor Regulation § 2509.75-8, 29 C.F.R. § 2509.75-8, Q & A D-2).  Thus, the *Taylor* court held that a plan sponsor's "Supervisor of Employee Benefits" was not an ERISA fiduciary, as his activities were limited to administrative ministerial functions, such as advising employees of their rights and options under the plan, preparing reports concerning participants' benefits, and calculating the costs of alternative plan amendments on behalf of the plan administrator.  *Id.* at 982.[7]

Defendants argue that Billeter was not named in any of the plan documents as either a

---

7.  *See also Robco of America, Inc. v. Ins. Co. of N. Am.,* 845 F.Supp. 1112, 1116 (W.D.Pa. 1994) (holding third-party administrator's role in administration of plan, consisting of claims processing, did not rise to the level of discretionary control required for fiduciary status (citing *Confer,* 952 F.2d at 36; other citation omitted)).

fiduciary or administrator, nor was he designated in the SPD or other plan documents as the person to whom benefit claims were to be submitted and determined.  Moreover, Defendants submit that the SPD and correspondence sent on CIGNA Group Insurance letterhead clearly show that Billeter's role was limited to claims processing and investigation, which are considered ministerial tasks under the Department of Labor regulations.  In response, Plaintiff relies on the same documents in arguing that Defendant Billeter was vested with discretionary authority to make a final determination on Plaintiff's appeal of the denial of her claim for accidental death benefits.[8]

After a close review of the plan documents and correspondence attached to the amended complaint, as well as the factual allegations in the amended complaint, the Court finds that none of these items supports Plaintiff's argument that Defendant Billeter acted as a fiduciary with regard to the handling of Plaintiff's appeal.  The correspondence shows that Defendant Billeter was employed by Connecticut General as the "Accident Claims Manager" in its "Accident & Specialty Claims Department." All of Billeter's correspondence with Plaintiff and/or her counsel was sent on CIGNA Group Insurance letterhead.  Plaintiff describes Billeter's role at Connecticut General as a "claims examiner."  (Am. Compl. ¶¶ 2, 34.)  Defendant Billeter was one of three employees in Connecticut General's "Accident & Specialty Claims Department" who "handled" Mrs. Erbe's claim for accidental death benefits.  In the initial denial letter sent by Renee Worst, she states that "*we* have determined that the policy provision regarding sickness would apply and no accidental death benefits are payable under the provisions of policy 2044589." (Ex. 4 at p. 2.)  (Emphasis added.)  Likewise, Defendant Billeter, in his August 11, 2005 letter informing Plaintiff of the decision on her appeal,

---

8. The cases cited by Plaintiff in support of Billeter's status as fiduciary all state generally the requirements for fiduciaries, but do not persuade the Court that Defendant Billeter's activities should be considered as anything other than ministerial administrative tasks.

states: "I maintain *our* initial position that no basic and occupational accidental death benefits are due . . . The Basic Accidental Death Insurance and Occupational Accidental Death Insurance only pays benefits for loss from bodily injuries caused by an accident, and thus *we* have determined that no accidental death benefits are payable under the provisions of policy # 2044589." (Ex. 5 at pp. 1, 4.) (Emphasis added.) The references to "*our* position" and "*we* have determined" in the correspondence from the claims examiners clearly indicates that the claims examiners were conveying the decision of Connecticut General, based on their review of the claim, supporting documentation, the plan documents. These activities fall within the parameter of claims processing, *e.g.*, reviewing the claim within a framework of policies, interpretations, rules, practices and procedures made by Connecticut General (and perhaps the employer and Plan Sponsor–Exxon) with respect to the Plan, and thus, do not constitute discretionary acts for purposes of fiduciary status. *Taylor,* 49 F.3d at 987.

This conclusion is further supported by Plaintiff's own description of the telephone conference between Defendant Billeter and her counsel that took place on July 13, 2005. In describing the alleged settlement agreement, Plaintiff asserts that Defendant Billeter "confirmed to plaintiff's counsel . . . that "CIGNA" agreed to pay the death benefit under the accidental death and dismemberment policy." (Am. Compl. ¶ 87.) Moreover, the SPD specifically delegates the Plan Administrator's responsibilities with regard to claims for benefits to CIGNA Insurance Group, at least with regard to the initial determination. (Ex. A to Defs.' Mot. to Dismiss at CGLIC - 000038.) The SPD reserves to the Plan Administrator (Administrator - Benefits) the authority to issue the

11

decision on the appeal.  (*Id.* at CGLIC - 000039.)[9]

Further evidence that Billeter lacked any discretionary authority or control to authorize or disallow claims is the subsequent denial of Plaintiff's appeal, after Billeter initially indicated orally on July 13, 2005 that CIGNA had reversed its position and would be paying the claim.  The change in position indicates that Billeter lacked discretionary control or authority to make a final determination and that the final decision to deny Plaintiff's claim was made by a person or entity (Connecticut General or Exxon) other than Billeter.

Thus, other than Plaintiff's conclusory allegations of discretionary authority/fiduciary status, which the Court is not required to consider, *see* note 5 *supra*, there are no facts set forth in the amended complaint or plan documents and correspondence to establish a claim for relief against Billeter based on his status as a fiduciary that is plausible on its face.  Accordingly, the Court will grant Defendant's motion to dismiss as to Defendant Billeter on all Counts.[10]

**B.    Claims Against Defendant Connecticut General**

**1.    Count I - Claims Under Section 502(a) of ERISA**

Although she fails to identify in the amended complaint the specific sections in ERISA allegedly violated, Plaintiff appears to be asserting two separate violations under Section 502(a) of

---

9.  The administrative claims procedure for appeals as set forth in the SPD appears to be contrary to what actually happened in this case, as Connecticut General issued the final decision on Plaintiff's claim.  This issue is not determinative, however, of Defendant Billeter's status as a fiduciary, because he was not delegated any discretionary authority under the SPD or other documents in this case.

10.  Dismissal of Count I against Billeter is proper for the additional reason that he is neither a "plan" nor the "administrator" as those terms are defined under ERISA.  As noted in Section B part 1, recovery under Section 1132(a)(1)(B) may be made against the plan or plan administrator; recovery under Section 1132(c) may be made only against the administrator.

ERISA in Count I.  First, Plaintiff alleges facts to support a claim under Section 502(a)(1)(B), codified at 29 U.S.C. §§ 1132(a)(1)(B), which allows plan participants and beneficiaries to bring suit to recover benefits due under the terms of the plan.  Defendants assert that Plaintiff's claim under Section 1132(a)(1)(B) is not properly pled and request that the Court dismiss this claim without prejudice to allow Plaintiff the opportunity to amend the complaint to state a proper and concise claim under Section 1132(a)(1)(B) for denial of benefits.[11]  However, Defendants do not explain how the allegations are deficient.

Under the liberal notice pleading standards in federal court, this Court's review of the factual allegations reveals that Plaintiff has sufficiently pled a claim for relief under Section 1132(a)(1)(B).  "A plaintiff seeking to recover under Section 502(a)(1)(B) must demonstrate that the benefits are actually 'due'; that is . . . she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.,* 465 F.3d 566, 574 (3d Cir. 2006) (citing 29 U.S.C. § 1132(a)(1)(B)).  To be legally "due," the benfits must have vested.[12]  *Id.*  Here the factual allegations in the amended complaint assert that Plaintiff's husband was a participant under the Plan and she is a beneficiary under the Plan, that she was entitled to accidental death benefits under the terms of the Plan, that Defendants wrongfully denied her these benefits, and that by denying her claim for benefits, Defendants have violated Section 502(a) of ERISA.  Plaintiff also sets forth in her amended

---

11.  Defendants submit that Plaintiff appears to be attempting to bootstrap a bad faith claim (*see* Am. Compl. ¶49) into what otherwise appears to be a correctly stated Section 1132(a)(1)(B) claim against Connecticut General.  Defendants submit  that bad faith is not a factor to be considered in determining a claim for relief under Section 1132(a)(1)(B).  Plaintiff's disputes that she is asserting a bad faith claim.   The Court does not read the amended complaint to allege a bad faith claim.

12.  Vesting is not at issue here.

complaint the reason she believes the denial was improper (Connecticut General's improper reliance on the definition of an "accident" in SPD when Plan document does not include the SPD in the definition of plan documents), an allegation regarding the proper standard of review (*de novo* versus abuse of discretion), and a request for payment of benefits due and prejudgment interest. The Court finds these allegations are sufficient to state a claim under Section 502(a)(1)(B) of ERISA to withstand a motion to dismiss under *Twombly*. Therefore, the Court will deny Defendants' Motion to Dismiss the Section 1132(a)(1)(B) claim against Defendant Connecticut General.[13]

The second claim asserted by Plaintiff in Count I is a claim under Section 502(a)(1)(A) of ERISA, which authorizes civil suits for the relief provided in Section 502(c).  29 U.S.C. § 1132(a)(1)(A), § 1132(c).  In particular, Section 502(c) of ERISA provides in relevant part:

> (c) Administrator's refusal to supply requested information; penalty
> for failure to provide annual report in complete form

---

13.  The Court notes that Connecticut General did not seek dismissal of this claim on the basis that it is not a proper defendant.  Generally, the proper defendant in a Section 1132(a)(1)(B) claim is the plan or plan administrator.  *See* 29 U.S.C. § 1132(d)(2); *Carducci v. Aetna U.S. Healthcare,* 247 F.  Supp. 2d 596, 607-08 (D.N.J. 2003) (noting that the courts of appeals are split as to whether a plan administrator may be liable under Section 502(a)(1)(B), and the Third Circuit has yet to decide this precise issue (*Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226 (3d Cir. 1994), does not directly address issue because its conclusion that the plaintiff could proceed against a plan administrator who was a fiduciary arose in the context of a claim under section 502(a)(3)(B)'s equitable relief provision)); *see also Burnstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found.,* 334 F.3d 365, 382 & n. 23 (3d Cir. 2003) (noting in dicta that plaintiff stated a claim for plan benefits under Section 502(a)(1)(B) against the plan and plan administrator).  Section 1132(d)(2) provides that "any money judgment under this subchapter against an employee benefit plan is enforceable against the plan as an entity and shall not be enforceable against any other person *unless liability against such person is established in his individual capacity under this subchapter.*"  (emphasis added.)  The highlighted language leaves open the possibility that a fiduciary may also be held liable under Section 1132(a)(1)(B).  Although Defendant Connecticut General has denied that it is the Plan Administrator, it appears to concede that it is a fiduciary with regard to claims processing and payment under ERISA. (Defs.' Br. at 14, 18.)

> (1) Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B).  In order to state a claim for relief under Section 1132(c)(1)(B), Plaintiff must prove that: (1) she is a plan participant or beneficiary; (2) the request for information must fall within the purview of the ERISA disclosure requirements, as determined by the plan administration exercising careful discretion;[14] and (3) the administrator failed to provide the requested documents within 30 days of a written request.  *Maiuro v. Fed. Express Corp.,* 843 F. Supp. 935, 942 (D.N.J. 1994).   Even if all of these requirements are met, courts have broad discretion in determining whether to assess statutory damages and the amount thereof, and will usually take into account whether the beneficiary's claim for benefits is colorable and if the administrator displayed bad faith in responding to the claim (not responding at all versus taking too long to respond).  *Id.* at 943 (citing *Bruch v. Firestone Tire & Rubber Co.,* 828 F.2d 134, 153 (3d Cir. 1987), *aff'd in part, rev'd in part* 489 U.S. 101 (1989)).   In deciding whether to assess statutory damages, "district judges must put the [plan] administrator's refusal or failure to provide information in the context of the situation. As

---

14.  The district court in *Maiuro* provided three criteria, and the court held that the existence of any one of these criteria would prove entitlement to the requested information.  The requested information will meet the these criteria if it either: "1) is of such a character that would directly assist the requesting party in determining what his or her rights are under the ... plan; or 2) will directly assist the requesting party determining where he or she stands (eligibility) with respect to the plan; or 3) will directly assist the requesting party in determining the extent of his or her interest (monetary) in the plan."  843 F. Supp. at 942.

a general guideline, when imposition of this penalty would assist the court in ensuring that [plan] administrators honor ERISA's goals and mandates, a judge should not hesitate to impose it to some degree or another." *Id.*

Turning to the case at bar, Defendants argue that this claim should be dismissed because Connecticut General was not vested with the responsibility for plan administration and therefore, could not be liable to Plaintiff for an alleged violation of Section 1132(c).  Defendants contend that the request for plan documents should have been submitted to the Plan Administrator identified in the SPD.[15]   In support, Defendants cite a number of cases for the proposition that the courts have consistently held an insurance company cannot be held liable for ERISA civil penalties when the plaintiff incorrectly directs a request for plan documents to the insurance company responsible for claim processing instead of to the plan administrator.[16]  (Defs.' Br. at 19.)  In response, Plaintiff points to decisions by other courts that have reached the opposite conclusion.  In particular, she notes

---

15.  The SPD provides that "all participants shall be entitled to . . . [o]btain copies of all plan documents and other plan information upon written request to Administrator - Benefits."  (Defs.' Ex. A. at CGLIC - 000040.)  Section 3(16)(A) defines the term "administrator" as follows:

      (i)       the person specifically so designated by the terms of the
                   instrument under which the plan is operated;
      (ii)     if an administrator is not so designated, the plan sponsor; or
      (iii)    in the case of a plan for which an administrator is not
                   designated and a plan sponsor cannot be identified, such
                   other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A).

16.  In support of this proposition, Defendants cite *Moran v. Aetna Life Ins. Co.,* 872 F. 2d 296, 298-300 (9th Cir. 1989); *Vanderklok v. Provident Life & Accident Ins. Co., Inc.,* 956 F.2d 610, 617-18 (6th Cir. 1992); *Anweiler v. Am. Elec. Power Serv. Corp.,* 3 F.3d 986, 994 n. 5 (7th Cir. 1993).  In addition, the Second and Tenth Circuits agree with the strict construction of the term "administrator" in Section 1132(c) followed by the Ninth, Sixth and Seventh Circuits, and disagree with the First Circuit's contrary conclusion in *Law v. Ernst & Young,* 956 F. 2d 364, 373 (1st Cir. 1992), upon which Plaintiff relies.  *See Lee v. Burkhart,* 991 F.2d 1004, 1010 n. 5 (2d Cir. 1993); *McKinsey v. Sentry Ins.,* 986 F.2d 401, 404 (10th Cir. 1993).

the holding by the First Circuit in *Law v. Ernst & Young,* 956 F. 2d 364, 373 (1st Cir. 1992), that

"where an entity of which the administrator is part in effect holds itself out as the plan administrator

by officially disseminating such information, we think it is subject to §1132(c) liability should it fail

to discharge that role in a proper way."  956 F.2d at 373.

The court of appeals decision in *Law* appears to be in the minority and stands in stark contrast

to the clear and unambiguous language of the statute.  *Estate of Fields v. Provident Life & Accident

Ins. Co.,* No. 99-CV-4261, 1999 WL 1257290, * 2 (E.D.Pa. Dec. 22, 1999) (finding the weight of

authority follows the reasoning of the Ninth Circuit in *Moran v. Aetna Life Ins., supra* (citing

*McKinsey v. Sentry Ins., supra*)).  As the Tenth Circuit opined in *McKinsey,* "when the statutory

language is clear and unambiguous, and admits of no other interpretation, the language must

ordinarily be regarded as conclusive." 986 F.2d at 404 (citation omitted).  The *McKinsey* court found

that Section 1002(16)(A), which provides that if a plan specifically designates a plan administrator,

then that individual or entity is the plan administrator for purposes of ERISA, was clear and

unambiguous.  *Id.*  Thus, the *McKinsey* court refused to follow the First Circuit's holding in *Law.*

This Court also finds the reasoning of the Tenth Circuit persuasive and therefore finds that based on

the clear and unambiguous language of Section 1002(16)(A), the Plan Administrator here is the

Administrator - Benefits and Administrator - Finance, both of whom are affiliated with the employer,

Exxon.  Thus, Plaintiff's attempt to hold Connecticut General liable as a *de facto* administrator must

fail.

Because Connecticut General (or Defendant Billeter, for that matter,) is not the named plan

administrator, it is not the proper party to be sued for a violation of Section 1132(c).  Therefore, the

Court will grant Defendants' Motion to Dismiss Count I as to the Section 1132(c) claim.

17

### 2.    Count II - Federal Common Law Breach of Contract

In Count II, Plaintiff essentially seeks to enforce an alleged oral settlement of her claim for accidental death benefits under the terms of the Plan. (Am. Compl. ¶¶ 101-102.) Defendants raise a number of arguments in support of dismissal, only one of which warrants dismissal of Count II..

In construing plan terms for purposes of claims under §1132(a)(1)(B), the courts have "'appl[ied] a federal common law of contract, informed both by general principles of contract law and by ERISA's purposes as manifested in its specific provisions.'" *Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found.,* 334 F.3d 365, 381 (3d Cir. 2003) (quoting *Feifer v. Prudential Ins. Co. of Am.,* 306 F.3d 1202, 1210 (2d Cir. 2002)).  The Court of Appeals recently clarified its position regarding the juxtaposition of general contract law and claims for benefits under ERISA in *Hooven v. Exxon Mobil Corp.,* 465 F.3d 566 (3d Cir. 2006).  In that case, the plaintiffs-employees sought severance benefits under an ERISA plan based on a federal common law breach of contract claim, rather than in a claim for benefits under Section 1132(a)(1)(B) of ERISA.  Construing the plan documents and SPD, the district court in *Hooven* found a unilateral contract existed and that plaintiffs were entitled to severance benefits.  *Id.* at 572.  On appeal, the Third Circuit rejected the district court's determination that the plaintiffs' rights to severance benefits arose by virtue of a unilateral contract under federal common law contract principles, noting:

> It is one thing to acknowledge that contract principles apply in ERISA cases. Clearly, they do.  Generally, "breach of contract principles, applied as a matter of federal law, govern" claims for benefits due under an ERISA plan.  *Kemmerer v. ICI Ams., Inc.,* 70 F.3d 281, 287 (3d Cir. 1995).  However, it is quite another to say that an employee's severance benefit can be grounded in, and enforceable based on, a unilateral contract outside of ERISA's remedial scheme.  Although this approach is intuitively appealing, and seemingly appropriate in this complex area, we conclude that it is inconsistent with the basic

18

framework of ERISA and, therefore, cannot be.

*Id.* at 572-73.  The Court of Appeals in *Hooven* further opined that although federal courts are vested with the authority to create federal common law under ERISA, they nonetheless may not "'lightly create additional rights under the rubric of federal common law'; we may exercise our common law authority to fashion new ERISA causes of action only where we deem it 'necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress.'" *Id.* at 573 n. 5 (quoting *Van Orman v. Am. Ins. Co.,* 680 F.2d 301, 312 (3d Cir. 1982)).

The Court gleans from this precedent that when a claim is made for benefits due under a plan governed by ERISA, the claim must be brought under Section 1132(a)(1)(B) and not as a breach of contract claim; however, contract principles apply when construing the plan documents to determine the terms of the plan and whether a claimant is entitled to benefits.  This is one of the contexts in which the courts have endorsed and employed the federal common law of contracts in ERISA cases.

In addition, federal common law contract principles have been employed to enforce oral and written settlement agreements that have been negotiated in litigation pending in the federal courts, including cases involving settlement of claims brought under ERISA. *See, e.g., Koenig v. Automatic Data Processing,* 156 Fed. Appx. 461, 467, 2005 WL 2891740, *5-6 (3d Cir. Nov. 3, 2005) ("It has been uniformly held that general principles of contract law-under the federal common law that guides interpretation of ERISA plans-are to be applied to the interpretation of the language of such severance agreements." (citing *Bock v. Computer Assocs. Int'l, Inc.,* 257 F.3d 700, 704 (7th Cir. 2001))); *Leavitt v. Nw. Bell Tel. Co.,* 921 F.2d 160, 162 (8th Cir. 1990) (holding releases of breach of fiduciary duty claims under ERISA were not barred by § 1110(a)); *Stewart v. Carter Machine Co., Inc.*, 82 Fed. Appx. 433, 435, 2003 WL 22682433, * 2 (6th Cir. Nov. 6, 2003) (affirming enforcement

19

of oral agreement to settle case involving ERISA and state law claims where parties agreed to essential terms of agreement and all that remained to be done was to reduce agreement to writing); *Anita Founds. Inc. v. ILGWU Nat'l Ret. Fund,* 710 F. Supp. 983, 987 (S.D.N.Y. 1989) (enforcing settlement agreement reached in ERISA action, noting that to permit defendants to avoid settlement agreements would seriously undermine the strong public policy favoring out of court settlements) (citations omitted); *John Boettcher Sewer & Excavating Co., Ltd. v. Midwest Operating Eng'rs Welfare Fund,* 803 F. Supp. 1420, 1426 (N.D. Ind. 1992) (enforcing oral settlement agreement between a multi-employer benefit fund and an employer regarding delinquent contributions to the fund); *Bd. of Trustees of the Sheet Metal Workers Local Union No. 137 Ins. Annuity & Apprenticeship Training Funds v. VIC Constr. Corp.,* 825 F.Supp. 463, 466 (E.D.N.Y. 1993) (applying federal common law of contracts, enforced an oral settlement agreement between an employee benefit fund and employer arising from an ERISA lawsuit involving a dispute as to whether the employer owed contributions to the fund).

These cases illustrate that a *valid* settlement agreement is enforceable irrespective of the nature of the claim that is the subject of the settlement,[17] barring an express statutory prohibition on settlement. The parties do not point to any such prohibition in ERISA that would apply here and the Court is not aware of any. Moreover, it is clear that "[p]ublic policy favors out of court settlements, even in the context of suits arising under ERISA." *John Boettcher Sewer & Excavating Co.,* 803 F. Supp. at 1425 (citing *Leavitt,* 921 F.2d at 162). As the court of appeals held in *Leavitt*: "We will not assign to Congress 'the intent of making an unreasonable law–one requiring terminal litigation,

---

17. Therefore, Defendants attempt to distinguish the cases cited by Plaintiff based on the nature of the underlying claim misses the mark.

rather than favoring settlements as does the general law.'" 921 F.2d at 162 (quoting *Stobnicki v. Textron, Inc.,* 868 F.2d 1460, 1463 (5th Cir. 1989) (holding ERISA allows settlement of benefits disputes)). Therefore, the Court concludes that Plaintiff's federal common law breach of contract claim to enforce the alleged settlement agreement is neither contrary to nor precluded by ERISA.[18] In so holding, the Court is not creating a new ERISA cause of action, but rather, is merely acknowledging established practice at common law of seeking court enforcement of settlement agreements.

That being said, the question remains as to whether settlement of claims can be consummated during the administrative review process. Defendants argue that based on the Department of Labor regulation requiring that the administrator provide written or electronic notification of the claim determination, 29 C.F.R. § 2560.503-1(j), an oral agreement is precluded because Plaintiff must await either written or electronic notification of the final decision before she can bring an ERISA action based on the oral representation. Defendants fail to cite any relevant authority for this proposition,[19] and the Court does not read that regulation as prohibiting settlements. Indeed, settlements are reached all of the time while claims are pending at the administrative review level

---

18. As Plaintiff correctly notes, the cases cited by Defendants on page 15 of the brief do not involve enforcement of settlement agreements, but rather, an attempt to obtain additional benefits not contained in the plan documents; the courts in those cases held the oral representations of a fiduciary could not alter written terms of a plan document and provide benefits beyond what was specified in plan documents. Thus, the cases cited by Defendant are inapposite here.

19. Although Defendants cite *Frahm v. Equitable Life Assurance Soc.,* 137 F.3d 955, 960 (7th Cir. 1998) in support, it is clear from reading that decision it does not support Defendants' position. Like the other cases cited by Defendants, that case involved an attempt to obtain additional benefits, based on oral representations, but not contained in the written plan documents. Nowhere in that case does the court of appeals refer to the notification procedure in the regulations.

in other areas subject to federal regulation.  The Court sees no reason why claims under ERISA should be treated any differently.

In addition, as Plaintiff points out, the Department of Labor regulation setting forth the content of the written or electronic notification informs the parties that they "may have other voluntary alternative dispute resolution options, such as mediation."  29 C.F.R. §2560.503-1(j)(5)(iii).  Thus, the regulation clearly anticipates alternative dispute resolution, which is a form of settlement, as an option for resolving ERISA claims.  Therefore, the Court concludes that a party to a settlement agreement, negotiated and formed during the administrative review process and involving a claim under ERISA, may bring a federal common law breach of contract claim to enforce the settlement agreement.

This does not end the inquiry.  The Court must finally determine whether Plaintiff has sufficiently pled the elements of a valid contract.  Defendants argue that Plaintiff has failed to state a claim for a valid contract.  According to Defendants, the alleged oral settlement agreement does not contain either an offer or acceptance by either party; nor do the allegations show a meeting of the minds or bargained for consideration.  Plaintiff has failed to respond to this argument.

Viewing the factual allegations in the light most favorable to Plaintiff, the Court finds that no reasonable jury would find a valid settlement agreement was reached between Defendant Billeter (on behalf of Connecticut General)[20] and Plaintiff.  At best, Billeter's alleged remarks on July 13, 2005 constitute a statement of Connecticut General's position with regard to Plaintiff's claim for benefits, nothing more.  Therefore, since Plaintiff has failed to establish elements of a valid contract,

---

20.  The Court makes no finding on Defendant Billeter's alleged express and/or apparent authority to bind Connecticut General.

22

the breach of contract claim cannot stand.  Accordingly, the Court will grant Defendants' motion to dismiss Count II of the amended complaint.

### 3.   Count III - Equitable Estoppel Claim

In Count III of the amended complaint, Plaintiff attempts to set forth a claim for equitable estoppel under ERISA.   In essence, Plaintiff contends that Defendants "made a material misrepresentation to [her] when they agreed to settle her claim while all along apparently realizing soon after that agreement was made that the settlement would not be consummated" and allowed 28 days to pass before clearing up the material misrepresentation. (Am. Compl. ¶ 104.) Plaintiff further asserts that the material misrepresentation itself and allowing the material misrepresentation to stand for almost a month, while discussions and decisions within Connecticut General occurred, resulting in a decision not to honor the settlement, constitute extraordinary circumstances for purposes of equitable estoppel. (*Id.* at ¶ 105.) Plaintiff also contends that she detrimentally relied on the promise of settlement, as evidenced by: (1)  her agreement to accept the monetary amount of the policy in exchange for not pursuing a claim for failure to provide the requested plan documents and failure to provide the SPD in a timely fashion, thereby forgoing the penalties allowed under Section 1132(c); (2) her agreement to give Defendant the discretion to determine whether statutory interest applied; and (3) her decision to forego lump sum settlement of her workers' compensation claim, which would have provided immediate use of the money for investment and otherwise, and ensured payment in the event of her death or remarriage, based on the misrepresentation that Connecticut General was reversing its decision and would be paying Plaintiff's claim for accidental death benefits. (*Id.* at ¶¶ 108-110.)  As a result of the material representation upon which she relied to her detriment, Plaintiff avers that she suffered damages and in her request for relief, seeks money

damages in the amount of the accidental death benefits due under the Plan, plus statutory interest, payment of statutory penalties for failure to provide requested documents under ERISA, and reasonable attorney's fees.  (*Id.* at ¶ 111.)

Defendants move to dismiss this claim on several bases.  First, Defendants claim that the relief sought by Plaintiff is in the nature of money damages, and only equitable relief may be granted on a claim for equitable estoppel.  Defendants further submit that the circumstances surrounding the the alleged material misrepresentation here are not extraordinary, that the alleged reliance on the material misrepresentation was not detrimental, and in any event, such reliance was not reasonable. In response, Plaintiff counters on two fronts.  First, she submits that Defendants have mischaracterized  her prayer for relief–she contends that she is not seeking damages, but rather, "payment of a vested right arising out of a settlement agreement to receive funds due to her under the Connecticut General Accidental Death & Dismemberment Policy."  (Pl.'s Br. in Opp'n at 31.) She further contends that she is seeking to "enjoin the defendant from failing to pay monies that it agreed to pay as part of the ERISA settlement."  (*Id.*)  Second, Plaintiff submits that at the pleading stage, she is allowed to plead both remedies, *i.e.,* claims under Section 1132(a)(1)(B) and Section 1132(a)(3), and pursue both claims until such time it is determined that there is a likelihood of success on the Section 1132(a)(1)(B).[21]  On her second point, Plaintiff's statement of the law is

---

21. In support of this proposition, Plaintiff cites several district court cases. *See, e.g., Tannenbaum v. UNUM Life Ins. Co. of Am.,* No. 03-CV-1410, 2004 WL 1084658, * 4 (E.D.Pa. Feb. 27, 2004) (relying on *Int'l Union, United Auto., Aerospace & Agric. Implementation Workers of Am., U.A.W. v. Skinner Engine Co.,* 188 F.3d 130, 148 n. 6 (3d Cir. 1999)); *Doyle v. Nationwide Ins. Cos. & Affil. Employee Health Care Plan,* 240 F. Supp. 2d 328, 349-50 (E.D.Pa. 2003); *Moore v. First Union Corp.,* C.A. No. 00-2512, 2000 WL 1052140, at * 1 (E.D.Pa. July 24, 2000); *Parente v. Bell Atlantic-Pa.*, C.A. No. 99-5478, 2000 WL 419981, at *4 (E.D.Pa. Apr. 18, 2000).  (Pl.'s Br. in Opp'n at 32.)

correct. Nonetheless, the Court will dismiss Plaintiff's equitable estoppel claim.[22]

The courts have allowed equitable estoppel claims under ERISA pursuant to the authority of Section 502(a)(3)(B) when appropriate. *Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226, 235 (3d Cir. 1994) (citing *Bixler v. Central Pa. Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1298 (3d Cir. 1993) ("holding that § 1132(a)(3)(B) authorizes the award of appropriate equitable relief to a beneficiary for violations of ERISA")). Section 502(a)(3)(B), which has been referred to as a "catchall provision", provides in relevant part: "A civil action may be brought– . . . by a participant, beneficiary, or fiduciary . . . to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan". 29 U.S.C. § 1132(a)(3)(B). The Supreme Court has held that the catchall provision under Section 1132(a)(3) may be invoked only when no other appropriate relief is available. *Varity,* 516 U.S. at 515. The Supreme Court further opined that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate." *Id.*

A threshold requirement to obtaining relief under Section 1132(a)(3)(B) is that the relief sought be equitable in nature. *Leckey v. Stefano,* ___ F.3d ___, Nos. 06-2483, 06-3161, 06-3162, 2007 WL 2458540, * 17 (3d Cir. Aug. 31, 2007) ("The real impediment to awarding relief under § 1132(a)(3)(B) is that only traditional equitable remedies are available." (citing *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 256 (1993); *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 209-10 (2002))). The equitable remedies granted under the federal common law of ERISA generally

---

22. In the cases cited in note 21, *supra,* the required elements of an equitable estoppel claim under Section 1132(a)(3) were sufficiently pled. That is not the case here, as explained *infra.*

include restitution, reinstatement, back pay and front pay, prejudgment interest, constructive trust, reformation of the plan, recovery for negative unjust enrichment (*i.e.,* recoupment of the amount saved by the improper denial of benefits), and rescission as a federal common law remedy for contracts entered into under a false representation of health.   *See* Jayne E. Zanglein & Susan J. Stabile, *ERISA Litigation*, Chapt. 8, Part IV, at 258 (2d ed. 2005) (citations omitted).   However, "[l]egal remedies like money damages–and even *legal* restitution–are not allowed."  *Leckey,* 2007 WL 2458540, at * 17 (citing *Great-West,* 534 U.S. at 213).[23]

Despite her argument to the contrary, here the only relief sought by Plaintiff on her equitable estoppel claim under Section 1132(a)(3)(B), *as stated in her amended complaint,* is payment of the benefits allegedly due to her under the Basic Occupational Accidental Death and Dismemberment Insurance Policy.  Plaintiff's amended complaint does not contain the request for relief she asserts for the first time in her brief in opposition to the motion to dismiss.  In any event, the substance of Plaintiff's newly formulated relief is almost identical to that requested in her claim for relief under Section 1132(a)(1)(B).  Clearly this relief is not equitable in nature and therefore, Plaintiff's equitable estoppel claim will not lie.

Notwithstanding this conclusion, dismissal of Plaintiff's equitable estoppel claim is warranted for another reason–she has failed to allege sufficient facts to establish all of the elements of a claim for equitable estoppel.  In *Curcio,* the Court of Appeals held that to succeed on equitable estoppel claim under ERISA, plaintiff must demonstrate a material representation, reasonable and

---

23.  In *Leckey,* the relief sought by the plaintiff under 1132(a)(3)(B) was a restitutionary remedy: an injunction directing the administrators and trustees to transfer to her all assets which were wrongfully distributed from the pension plan, along with interest accrued.  *Id.*  The Court of Appeals found that based on *Great-West,* equitable relief in the form of a constructive trust was available to plaintiff, since some of the disputed assets remained intact in a traceable fund.  *Id.*

detrimental reliance upon the representation, and extraordinary circumstances.  33 F.3d at 235-36. The Court finds that Plaintiff has failed to plead sufficient facts to show that extraordinary circumstances exist here or that her reliance on the alleged misrepresentations was reasonable.

The Third Circuit has relied on case law to establish the parameters of extraordinary circumstances for equitable estoppel under ERISA.  *Kurz v. Philadelphia Elec. Co.,* 96 F.3d 1544, 1553 (3d Cir. 1996) (citing *Curcio,* 33 F.3d at 235).  To establish extraordinary circumstances, the Court of Appeals has required a "showing of affirmative acts of fraud or similarly inequitable conduct by an employer."[24]  *Id.*   The Court of Appeals has also focused on the "network of misrepresentations that arises over an extended course of dealing between parties",[25] such as  where the plaintiff "repeatedly and diligently inquired about benefits and defendant repeatedly misrepresented the scope of coverage to plaintiff.[26]  *Id.*  In addition, the Court of Appeals has also considered the vulnerability of the particular plaintiff.[27]  *Id.*  The *Kurz* court noted that this  precedent showed that a plaintiff must do more than establish the ordinary elements of equitable estoppel in order to succeed on that theory under ERISA.  *Id.*  (citing *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1142 (3d Cir. 1993); *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3d Cir. 1991)).  In light of this heightened standard, the Court of Appeals has "consistently rejected estoppel claims based on simple ERISA reporting errors or disclosure violations, such as a variation between

---

24.  *Rosen v. Hotel & Rest. Employees & Bartenders Union,* 637 F.2d 592, 598 (3d Cir. 1981) (other citation omitted).

25.  *Curcio,* 33 F.3d at 328.

26.  *Smith v. Hartford Ins. Group,* 6 F.3d 131, 142 (3d Cir. 1993).

27.  *See* notes 25 & 26, *supra.*

27

a plan summary and the plan itself, or an omission in the disclosure documents." *Id.* (citations omitted).

Applying this law to the case at bar, it is clear that none of the allegations in the amended complaint can be construed as pleading extraordinary circumstances. The alleged misrepresentation here occurred once–on July 13, 2005–when Defendant Billeter informed Plaintiff's counsel that CIGNA was reversing its decision. This representation was not repeated, and in fact, when nothing in writing was forthcoming from Connecticut General, Plaintiff's counsel sent a letter to Billeter on July 19, 2005[28] confirming the settlement, and approximately three weeks later, Connecticut General issued its written decision denying the appeal. The mere passage of 28 days between the telephone conference on July 13, 2005 and the final written determination on August 11, 2005, is not so long that it rises to the level of extraordinary. Plaintiff was represented by counsel at the time and thus does not appear to be particularly vulnerable. Therefore, the Court finds that Plaintiff has failed establish an essential element of her claim for equitable estoppel.

In addition, the Court finds that Plaintiff has failed to allege that her reliance on the misrepresentation was reasonable. As reasonableness is a necessary element of a claim for equitable estoppel, Count III is also deficient in this regard. Even if the allegations in the amended complaint could be construed to plead reasonableness, the Court finds that it was not reasonable for Plaintiff to rely on the oral representation without written notification from Connecticut General. The regulations governing the administrative review process under ERISA require either written or

---

28. A copy of the July 19, 2005 letter is included in the amended complaint immediately following paragraph 90.

electronic notification of the final determination.[29]  Thus, a reasonable person would have waited for written or electronic notification before taking any action.

Accordingly, for all of these reasons, the Court finds Plaintiff has failed to pled a claim for equitable estoppel under ERISA.[30]  Therefore, the Court will grant Defendants' motion to dismiss Count III of the amended complaint.

### 4.   Count IV - Breach of Fiduciary Duty

In Count IV of the amended complaint, Plaintiff asserts that Defendants breached fiduciary duties of loyalty and prudence owed to her when they made material misrepresentations to her regarding the alleged settlement of her claim, knowing that the representations were materially incorrect and false, and that harm would result, and that she relied upon these representations to her detriment.  (Am. Compl. ¶¶ 113-117.)  Defendants move to dismiss this claim on the basis that the relief sought by Plaintiff is not equitable, but rather, payment of benefits that she claims are due to her.  In response, Plaintiff raises the same argument as she did in defense of her equitable estoppel claim–that she is entitled to proceed simultaneously on claims under Section 1132(a)(1)(B) and 1132(a)(3) at this stage of the proceedings.  The Court agrees with Defendants that Count IV should be dismissed.

Although Plaintiff does not specify in her amended complaint the particular section of ERISA implicated as to her breach of fiduciary duty claim, it is clear that the only section of ERISA that

---

29.  During the administrative review process, after an initial determination has been issued and an appeal taken, the administrator is required to notify the claimant, either in writing or electronically, of the plan's benefit determination on review.  29 C.F.R. § 2560.503-1(i)(1)(i).

30.  Connecticut General also maintains that Plaintiff has not alleged sufficient facts to show detrimental reliance.  The Court does not find any merit to this argument, in light of the early stage of this litigation.

could be implicated is the catchall provision contained in Section 502(a)(3)(B). *See* 29 U.S.C. §

1132(a)(3)(B).[31]  Of particular importance here, the Supreme Court noted that "ERISA specifically

provides a remedy for breaches of fiduciary duty with respect to . . . the payment of claims" in

Section 1132(a)(1)(B), "that runs directly to the injured beneficiary." *Varity,* 516 U.S. at 512 (citing

*Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 108 (1989)).  Several courts following *Varity*

have thus held that "when a plaintiff brings actions under sections 1132(a)(1)(B) and 1132(a)(3) and

the latter merely duplicates the relief sought under the former, appropriate relief is available under

section 1132(a)(1)(B), and the section 1132(a)(3) action must be dismissed." *Roig v. The Limited*

*Long Term Disability Program,* No. Civ.A. 99-2460, 2000 WL 1146522, * 10 (E.D.La. Aug. 4,

2000) (citing *Wald v. Sw. Bell Corp. Customcare Med. Plan,* 83 F.3d 1002, 1006 (8th Cir. 1996);

*Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998); *Joyce  v. Curtiss-Wright Corp*.,

992 F. Supp. 259, 270 (W.D.N.Y. 1997), *aff'd* 171 F.3d 130 (2d Cir. 1999); *Kiefer v. Ceridian*

*Corp.,* 976 F. Supp. 829, 844 (D. Minn. 1997)).  In *Roig,* the district court found that the plaintiff's

claim for breach of fiduciary duty was "merely a disguised claim for failure to pay benefits" as the

only damages plaintiff sought were the benefits allegedly due, along with interest, reasonable

attorney's fees and costs.  *Id.*  Thus, the court held plaintiff's breach of fiduciary duty claim under

Section 1132(a)(3) was not viable since Section 1132(a)(1)(B) provided an appropriate remedy.  *Id.*

---

31.  The only other provision under ERISA for which a civil action may be brought that
addresses liability for breach of fiduciary duty is 29 U.S.C. § 1132(a)(2), which allows a claim to
be brought by the Secretary, a participant, beneficiary, or fiduciary for appropriate relief under 29
U.S.C. § 1109.  However, Plaintiff cannot recover under Section 1109, as recovery under this
section inures to the plan, not the individual.  *Hartman v. Wilkes-Barre Gen. Hosp.,* 237 F. Supp.
2d 552, 557 (M.D.Pa. 2002) (citing *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134,
140 (1985)); *see also Varity,* 516 U.S. at 515 (citation omitted); *Leckey,* 2007 WL 2458540, at *3
(citing *Massachusetts Mut. Life, supra*; other citation omitted).

Similarly, the district court in *Hartman v. Wilkes-Barre Gen. Hosp.,* 237 F. Supp. 2d 552, 557 (M.D.Pa. 2002), found Section 1132(a)(3) inappropriate because the essence of plaintiff's claim for breach of fiduciary duties was one for payment of benefits allegedly due to her.   Noting the Supreme Court's holding in *West Life & Annuity Ins. v. Knudson,* 534 U.S. 204, 210-11 (2002), "that a claim for money due and owing is not equitable relief and does not fall under  [section 1132(a)(3)]," the district court in *Hartman* dismissed plaintiff's breach of fiduciary duty claim, as the relief she sought was not available under that section.  237 F. Supp. 2d at 557.  The court further noted that dismissal of the claim for breach of fiduciary duty did not prevent plaintiff from potentially obtaining the relief that she sought.  *Id.*

Like the plaintiffs in *Hartman* and *Roig,* the relief Plaintiff seeks, under the guise of a breach of fiduciary duty claim, is the recovery of the monies due to her under the Plan.  Consequently, the Court finds that relief under Section 1132(a)(3) is not appropriate.  Accordingly, the Court will grant Defendants' Motion to Dismiss Count IV of the amended complaint.[32]

## IV.   CONCLUSION

For the reasons set forth above, the Court will grant Defendants Motion to Dismiss (Doc. No. 28) as to Defendant Brian Billeter on all Counts, and will grant said motion as to Defendant Connecticut General on Count I  as to Plaintiff's claim for relief under 29 U.S.C. § 1132(a)(1)(A),

---

32.  Should Plaintiff seek leave of court to amend her complaint to add a proper allegation as to the equitable relief sought in her breach of fiduciary duty claim, the Court would be inclined to allow such amendment. Currently, except for pleading a proper request for equitable relief, the amended complaint sufficiently pleads all of the required elements of a breach of fiduciary duty claim–Connecticut General's status as a fiduciary, a material misrepresentation by Connecticut General, and detrimental reliance by Plaintiff on the material misrepresentation.  *Burnstein,* 334 F.3d at 387 (citing *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001)).

and on Counts II, III and IV.   In all other respects, Defendants' motion will be denied.   An appropriate order follows.

## ORDER

AND NOW, to wit, this 28th day of September, 2007, it is hereby ORDERED that Defendants' Motion to Dismiss the Amended Complaint (Doc. No. 28) is GRANTED IN PART and DENIED IN PART.   Said Motion is GRANTED as to Defendant Brian Billeter on all Counts and the amended complaint is hereby DISMISSED WITH PREJUDICE as to Brian Billeter.   IT IS FURTHER ORDERED that the Defendants' Motion to Dismiss as to Defendant Connecticut General is GRANTED on Count I as to Plaintiff's claim for relief under 29 U.S.C. § 1132(a)(1)(A), and on Counts II, III and IV, and is DENIED in all other respects.

By the Court:

s/ Terrence F. McVerry
United States District Judge

cc:   Honorable Lisa Pupo Lenihan
     United States Magistrate Judge

     All Counsel of Record
     *Via Electronic Mail*