IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY KAREN ERBE, )<br>Executrix of the Estate of Edward Erbe, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CONNECTICUT GENERAL LIFE )<br>INSURANCE CO., )<br>)<br>Defendant. )<br>) | Civil Action No. 06-113<br><br>Judge Terrence F. McVerry<br>Magistrate Judge Lisa Pupo Lenihan<br><br>Doc. Nos. 49, 52 |

**OPINION AND ORDER**

McVERRY, J.

Currently before the Court for disposition are cross-motions for summary judgment in this ERISA action brought under 29 U.S.C. § 1132(a)(1)(B) for review of a denial of benefits. The sole legal issue before the Court is which standard of review is to be applied to the denial of a claim for accidental death and dismemberment benefits–the *de novo* standard of review, or the more deferential arbitrary and capricious standard of review. Because the Court finds as a matter of law that the Policy does not contain either an express or implied delegation of discretionary authority to Connecticut General, the Court concludes that under *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989), the *de novo* standard of review should be applied to the denial of Plaintiff's claim for accidental death benefits.

**I.     STATEMENT OF RELEVANT FACTS**

The issue before the Court is purely a legal one. By way of background, the relevant facts have been previously set forth in the Magistrate Judge's Report & Recommendation dated October

16, 2006 (Doc. 24) and in this Court's opinion dated September 28, 2007 (Doc. 36), and therefore, will not be reiterated here.

II.     **STANDARD OF REVIEW - CROSS-MOTIONS FOR SUMMARY JUDGMENT**[1]

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

More specifically, the moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis added by *Matsushita* court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When the parties have filed cross-motions for summary judgment, as in this case, the

---

[1] Defendant's motion is entitled "Motion for Judgment on Standard of Review" without any reference to a particular federal rule of civil procedure, nor does Defendant set forth the standard of review for such motion. The Court presumes that this motion is brought pursuant to Fed.R.Civ.P. 56.

summary judgment standard remains the same. *Transguard Ins. Co. of Am., Inc. v. Hinchey*, 464 F.Supp.2d 425, 430 (M.D.Pa. 2006). "When confronted with cross-motions for summary judgment, . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'" *Id.* (quoting *Marciniak v. Prudential Fin. Ins. Co. of Am.,* No. 05-4456, 184 Fed. Appx. 266, 270 (3d Cir. June 21, 2006)). "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." *Id.* (citing *Iberia Foods Corp. v. Romeo,* 150 F.3d 298, 302 (3d Cir. 1998)).

### III. DISCUSSION

"ERISA does not specify the standard of review that a trial court should apply in an action for wrongful denial of benefits." *Post v. Hartford Ins. Co.*, 501 F.3d 154, 160 (3d Cir. 2007). However, the United States Supreme Court has held that "a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[2] *Firestone*, 489 U.S. at 115. Hence, if the plan does not clearly grant such

---

[2] Section 3(21)(A) of ERISA provides the following definition of a fiduciary:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of [title 29].

29 U.S.C. § 1002(21)(A). Section 1105(c)(1)(B) provides in relevant part: "[The plan document] may expressly provide for procedures . . . for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities. . . ." 29 U.S.C. § 1105(c)(1)(B). ERISA further provides that a corporation may be a "person" under the definition of fiduciary. 29 U.S.C. § 1002(9). It is well established that a determination about whether a claimant is entitled to benefits under the terms of the plan documents

discretion, a *de novo* review is required.

Whether a plan confers discretionary powers upon a fiduciary depends upon the terms of the policy. *Luby v. Teamsters Health, Welfare and Pension Trust Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991). Discretionary powers may be implied as well as express. *Id*. ("no 'magic words,' such as 'discretion is granted . . . ,' need to be expressly stated . . . so long as the plan on its face clearly grants such discretion"(quoting *De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1187)(4th Cir. 1989)). In order to determine whether the plan language implicitly grants discretionary authority, the court must interpret the policy as a whole, and "in light of all the circumstances." *Luby*, 944 F.2d at 1180.

In this case, the parties agree that the Policy lacks an express grant of discretionary authority to CG to determine eligibility for benefits or to construe the terms of the Policy. Further, in its previous opinion on Defendant's Motion to Dismiss, this Court stated the Policy "does not contain any express provisions regarding the identity of the Plan Administrator(s) or fiduciaries, or the extent of any discretionary authority or control delegated to either the Plan Administrator(s) or fiduciaries. (Doc. 36 at 3.) However, the parties disagree as to whether the Policy grants CG implied discretionary authority to determine eligibility for benefits or to construe the terms of the Policy. Mrs. Erbe asks this Court to apply a *de novo* standard contending that the Policy contains no language which can be construed as conferring discretionary authority to determine eligibility for

---

is a fiduciary act connected to plan administration. *Aetna Health Inc. v. Davila,* 542 U.S. 200, 219-20 (2004) (citing *Varity Corp. v. Howe,* 516 U.S. 489, 512 (1996)). Fiduciary status does not simply attach to any administrative activity, but rather, only to the person who has final authority to authorize or disallow a claim for benefits under the plan. *Varity,* 516 U.S. at 512 (citing Dep't of Labor Interpretative Bulletin § 75-8, 29 C.F.R. § 2509.75-8 (1995)). In addition, such person must be acting as a fiduciary when determining a claim for benefits. *Davila,* 542 U.S. at 220. CG concedes that it is a fiduciary, but only with respect to claims processing and payment. (Doc. 29 at 14, 18.) CG claims, however, it was not vested with the responsibility of the plan administration. (Doc. 29 at 18.)

4

benefits or to construe the terms of the plan. (Doc. 53 at 6.) On the other hand, CG requests this Court to apply the arbitrary and capricious standard arguing that a delegation of discretionary authority to it can be implied from certain provisions in the Policy. Specifically, CG contends that three types of provisions in the Certificate,[3] when considered together, indicate CG was implicitly granted discretionary authority to determine eligibility for accidental death benefits: (1) provisions requiring that a claimant provide CG with "due proof of loss"; (2) a provision stating that CG has a right to demand a "medical exam of any claimant as often as it may reasonably require"; and (3) a provision requiring that the claimant submit to CG proof of "occurrence, character, and extent of loss." (Doc. 50 at 3.) The Court will examine these provisions, in turn.

### A.  Provisions Requiring "Due Proof" of Loss

CG first argues that provisions in a plan requiring a client to provide "due proof" or "satisfactory proof" to the insurer demonstrate that the insurer has the discretion to make benefits eligibility determinations and therefore warrants application of the arbitrary and capricious standard. In support of this argument, CG cites *Pinto v. Reliance Standard Life Ins*. Co., No. 97-5297, slip op.

---

[3] The Policy underwritten by CG also includes a number of Certificates which have been integrated and made part of the Policy. The term "Certificate," as used throughout this opinion, refers to Certificate Number CN010 Accidental Death and Dismemberment Insurance. Plaintiff maintains, however, that the Court should only consider the language in the Policy, and not that contained in the Certificate, in order to determine whether discretion exists, citing in support, *Shaw v. Connecticut Gen. Life Ins.*, 353 F.3d 1276 (11th Cir. 2003). (Doc. 53 at 5, n.1.) The Court disagrees. The Court has previously noted that the Policy at issue "includes an integration clause, which provides that the Plan documents consist of the insurance policy, including the certificates, plus any applications submitted by Exxon or a beneficiary." (Doc. 36 at 3). This conclusion is predicated on the actual language set forth in the Policy, which states in Section 3, under "Insurance Schedule" that "[t]hese Certificates are included in and made a part of the policy(ies)." Moreover, the Court does not find that the provisions in the Certificate are inconsistent with or change the terms of the Policy as Mrs. Erbe suggests.

5

at 7 (3d Cir. May 28, 1998) ("*Pinto I*"); *Pinto v. Reliance Standard Life Ins*. Co., 214 F.3d 377 (3d Cir. 2000) ("*Pinto II*"), a number of district court cases from this Circuit, as well as district court cases from the Sixth, Seventh, and Tenth Circuit, and a non-precedential decision from the Sixth Circuit. For the reasons that follow, the Court is not persuaded by either CG's argument or its cited authority.

The "due proof" of loss language in the Certificate, upon which CG relies, is contained in the following relevant provisions:

> **ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS**
> **For You**
> **Accidental Death Benefits**
> **Any Accident**
> CG will pay the Benefit Amount for any accident when it receives *due proof* that:
> - you received an accidental bodily injury while insured for this benefit; and
> - as a direct result of that injury, independent of all other causes, you died while insured for this benefit.
>
> **Accident Related to Work**
> CG will pay the Benefit Amount for an accident related to work when it receives *due proof* that:
> - the injury arose out of and in the course of employment by Exxon Mobil Corporation; and
> - the injury was one which would Warrant Worker's Compensation.
>
> . . .
>
> **PAYMENT OF BENEFITS**
> **Time of Payment**
> All benefits will be paid by CG when it receives *due proof* of loss.

(Doc. 53-2 at 23, 27.) (emphasis added.)

Neither the United States Supreme Court nor the United States Court of Appeals for the

6

Third Circuit have addressed the precise issue before this Court: whether the language in an accidental death and dismemberment policy indicating benefits will be paid when the insurance company receives "due proof" implicitly grants discretionary authority to the insurer to determine eligibility for benefits or to construe the plan terms. In addition, the district courts in this circuit are split on this issue. CG relies on *Pinto I*, asserting that decision supports its argument that "requiring that a claimant provide 'due proof' or 'satisfactory proof' to the insurer demonstrates that the insurer has the discretion to make benefits eligibility determinations and warrants the application of the arbitrary and capricious standard of review." (Doc. 50 at 3.) CG reaches this conclusion by citing the following *Pinto I* language: "In any event, the provision of the Plan requiring that a claimant provide 'satisfactory proof' of disability provides the necessary discretion." *Pinto I,* at * 7. However, such reliance is misplaced for several reasons. First, CG would have this Court find that "due proof" can be equated with "satisfactory proof." CG does not cite any controlling precedent for this position. Second, and more importantly, the parties in *Pinto I* <u>conceded</u> that the terms of the plan implicitly granted the insurance company with discretionary authority to make eligibility determinations. Accordingly, the Court of Appeals' remark regarding "satisfactory proof" is <u>dicta</u> and not binding. The *Pinto I* court did not discuss or analyze the actual terms of the plan or provide any explanation for the comment that "satisfactory proof" provided the necessary discretion. Thus, *Pinto I* provides no guidance on the issue before this Court. Finally, the decision in *Pinto I* is an unpublished slip opinion, and not binding upon this Court.

Subsequently, the parties in *Pinto I* were again before the Court of Appeals, which issued a published and precedential decision in *Pinto II*. In *Pinto II*, a different panel of the court of appeals was asked to determine when the heightened arbitrary and capricious standard was to be applied and

7

what the heightened standard would entail. To the extent Defendant is arguing that *Pinto II* confirms that the language "satisfactory proof" implies discretion, that argument lacks merit as the Third Circuit did not make any such finding or holding. Rather, a careful review of *Pinto II* reveals that the statement relied on by CG is actually encompassed in the facts and procedural history section of the opinion. There, the Court of Appeals summarily described the policy language: "[t]he policy provides benefits for individuals who submit 'satisfactory proof' of 'Total Disability' to Reliance Standard." After quoting the definition of "Totally Disabled," the court of appeals then stated, "[i]t is undisputed that Reliance Standard had discretion to interpret the plan." *Pinto II*, 214 F.3d at 379. In paraphrasing the panel's opinion in *Pinto I*, the panel in *Pinto II* appears to have inadvertently omitted from the second part of the quote that it was the parties who did not dispute that Reliance had discretion to interpret the plan. By omitting this fact, the panel's statement in *Pinto II* implies that the first panel concluded that the insurance company had discretion to interpret the plan solely from the language in the policy to the effect that benefits will be provided to individuals who submit satisfactory proof of total disability, when, in fact, that was not the holding of the panel in *Pinto I*. Additionally, neither *Pinto I* nor *Pinto II* provides any analysis or consideration of Congress' purpose in enacting ERISA, the Supreme Court's reasoning in making *de novo* review the presumption, or any other relevant authority. Without the benefit of such analysis, this Court does not find either *Pinto I* or *Pinto II* controlling or instructive. Therefore, CG's reliance on *Pinto I* and *Pinto II* is misplaced.

Although there is no controlling case law addressing the standard of review on denial of benefit claims in the context of an accidental death claim involving "due proof" language, the Court finds instructive the district court's opinion in *Ayers v. Continental Casualty Co.*, 955 F.Supp.50

8

(W.D. Va. 1996). In determining which standard of review to apply, the district court in *Ayers* was confronted with a provision of an ERISA accidental death and dismemberment policy that stated "[i]ndemnities payable under this policy will be paid immediately upon receipt of due written proof of loss." *Ayers*, 955 F.Supp. at 53. The district court rejected the insurance company's assertion that the "due written proof of loss" provision was sufficient to imply discretion and applied the *de novo* standard of review. *Id*. In so holding, the district court stated, " [t]o accept [the insurance company]'s argument here would effectively subject all ERISA benefit claims to the abuse of discretion standard of review. The language relied on by [the insurance company] is the minimum necessary to act on a claim, and presumably, virtually all plans have similar language." *Id*.

The Policy in the case at bar is similar to the one in *Ayers* in that the "due proof" language appears in a provision for the payment of benefits. However, unlike the policy in *Ayers*, the instant Policy includes an additional reference to "due proof" in the section entitled Accidental Death Benefits, which essentially provides that CG will pay the benefit amount for any accident or an accident related to work when it receives due proof of certain enumerated facts or conditions. The Court finds that the inclusion of the "due proof" language in the Accidental Death Benefits section does not clearly confer discretionary authority to CG to make final eligibility determinations.

In reaching this conclusion, the Court is instructed by the district court's opinion in *Wilson v. Life Ins. Co. of North America*, 424 F.Supp.2d 1146 (D.Neb. 2006). In determining whether language in an LTD plan expressed an intent to confer discretionary authority to the insurance company, the district court in *Wilson* was faced with language similar to that in Mrs. Erbe's Policy:

> The insurance company will begin paying Monthly Benefits in amounts determined from the Schedule when it *receives due proof* that:

9

> (1) the Employee became Disabled while insured . . . ; and
> (2) his Disability has continued for [a certain period of time].

*Wilson*, 424 F.Supp.2d at 1148 (emphasis added by *Wilson* court). The district court concluded that this language, and in particular, the reference to "due proof," did not confer discretion upon the insurance company. *Id*. at 1156. In so concluding, the district court found persuasive the reasoning of a circuit judge sitting by designation in *Kramer v. Life Ins. Co. of North America*, 8:03-CV-152, slip op. at 4 (D.Neb. July 30, 2004), which involved identical policy language. The *Kramer* court reasoned that:

> The language "when it receives due proof" [did] not explicitly identify LINA as the entity to determine whether the proof is due. The clause simply provides LINA must receive "due proof." In the absence of language indicating LINA is the entity to determine if the proof is due or adequate, this court interprets the provision to allow payment of benefits when a reasonable objective person believes he or she received due proof, subjecting LINA's eligibility determination to *de novo* review.

*Wilson*, 424 F.Supp.2d at 1156 (quoting *Kramer*, slip op. at 4). Similarly, here, the Accidental Death Benefits provision does not indicate that CG is the entity who will determine if the proof is due or adequate. Certainly, the language at issue can be construed to mean that payment of benefits will be made by CG when a reasonably objective person believes CG received due proof.[4]

---

[4] Arguably, there are two possible interpretations of the term "due proof." One interpretation would require a claimant to submit proof that is objectively sufficient or reasonable, while the other would require a claimant to submit written proof of death that the fiduciary determines to be sufficient. *See Gower v. AIG, Claims Services, Inc.*, 501 F.Supp.2d 762, 771 (N.D.W.Va. 2007). Where the plan language does not clearly indicate which interpretation is correct, courts have found the language ambiguous and held that the phrase "due written proof" does not clearly establish the intent to grant final discretionary authority to the administrator or fiduciary. *See, e.g. Gower*, 501 F.Supp. at 771; *Hughes v. Prudential Life Ins. of Am.*, Civ. A. No.7:04-CV-00450, 2005 WL 839924, at *4-5 (W.D. Va. Apr. 12, 2005); *cf. Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 270-271 (4th Cir. 2002) (in construing the phrase "satisfactory proof of Total Disability to us," the Court of Appeals found two possible interpretations of satisfactory proof, one objective, the other subjective, and therefore, the plan did not vest discretionary authority in administrator).

The decision of the Court of Appeals for the Seventh Circuit also supports this conclusion. In *Hetzberger v. Standard Ins. Co.*, 205 F.3d 327 (7th Cir. 2000), the Seventh Circuit stated:

> We hold that the mere fact that a plan requires a determination of eligibility or entitlement by the administrator, or requires proof or satisfactory proof of the applicant's claim, or requires both a determination and proof (or satisfactory proof), does not give the employee adequate notice that the plan administrator is to make a judgment largely insulated from judicial review by reason of being discretionary. Obviously a plan will not-could not, consistent with its fiduciary obligation to the other participants-pay benefits without first making a determination that the applicant was entitled to them. The statement of this truism in the plan document implies nothing one way or the other about the scope of judicial review of his determination, any more than our statement that a district court "determined" this or that telegraphs the scope of our judicial review of that determination. That the plan administrator will not pay benefits until he receives satisfactory proof of entitlement likewise states the obvious, echoing standard language in insurance contracts not thought to confer any discretionary powers on the insurer. See *Bounds v. Bell Atlantic Enterprises Flexible Long-Term Disability Plan, . . .* 32 F.3d [337,] 339 [(8th Cir. 1994)]; 13A George J. Couch, Ronald A. Anderson & Mark S. Rhodes, *Couch on Insurance* §49A:27 (2d rev. ed. 1982).When an automobile insurance policy provides that the insurer will not pay for collision damage save upon submission of proof of that damage, all it is saying is that it will not pay upon the insured's say-so; it will require proof. There is no reason to interpret an ERISA plan differently. See *Bounds v. Bell Atlantic Enterprises Flexible Long-Term Disability Plan, supra*.

*Herzberger*, 205 F.3d at 332. The Court finds the reasoning of the Seventh Circuit persuasive, as well as the district courts' decisions in *Ayers* and *Wilson*, and concludes that use of the term "due proof" in Erbe's Policy does not confer the necessary final discretionary authority to CG on benefit

---

Accordingly, those courts applied a *de novo* standard of review to the denial of benefits under an ERISA plan.

determinations or construction of plan terms. For an accidental death claim, it is expected that a claimant will need to submit proof of entitlement to the benefits. Including the language "due proof" in no way informs the claimant that the fiduciary is making the final decision absent judicial review. Moreover, "'[i]t is easy to write explicit language satisfying the *Firestone* exception for grants of discretionary power. Searching for implicit grants of such authority creates a serious risk that courts, and parties, will get lost in what the Second Circuit accurately described as 'semantic swamps' in this debate.'" *Starita v. NYLCare Health Plans, Inc.,* Civ. A. No. 98-5375, 2000 WL 330038, *4 (E.D.Pa. Mar. 29, 2000) (quoting *Neurological Res. v. Anthem Ins. Co.,* 61 F.Supp. 2d 840, 850 (S.D. Ind. 1999) (citing *Kinstler v. First Reliance Standard Life Ins*. Co., 181 F.3d 243, 252 (2d Cir. 1999)) (other citation omitted).

Lastly, the Court notes that while it is not controlling, *Siderio v. CIGNA Corp.*, Civ. A. No. 96-7679, 1998 WL 398073, at *6 (E.D. Pa. Jun. 30, 1998), further buttresses the Court's conclusion here that the Policy language lacks the requisite intent to confer final discretionary authority to the fiduciary. In *Siderio*, CG, the same defendant as in this case, agreed that similar language in an LTD policy did not impliedly grant it discretionary authority, thereby subjecting the denial of benefits to *de novo* review.

    B.   **<u>Physical Exam and Occurrence Provisions</u>**

In addition to the above provisions containing "due proof" language, CG submits that the language in two other general provisions found in the Accident and Health section indicate that discretionary authority was delegated to it. (Doc. 50 at 5-7.) Plaintiff contends that these provisions fail to provide the necessary discretion. (Doc. 59 at 2, n.2 & n.3.) These provisions, which are

contained in the Certificate,[5] state:

> **ACCIDENT AND HEALTH PROVISIONS**
>
> . . .
>
> **Claim Forms**
> When CG receives the notice of claim, it will give to the claimant, or to the Policyholder for the claimant, the claim forms which it uses for filing proof of loss. If the claimant does not get these claim forms within 15 days after CG receives notice of claim, he will be considered to meet the proof of loss requirements of the policy if he submits written proof of loss within 90 days after the date of loss. The proof must describe the *occurrence, character and extent of the loss for which the claim is made.*
> . . .
>
> **Physical Examination**
> CG, at its own expense, will have the right to examine any person for whom claim is pending as often as it may reasonably require.

(Doc. 53-2 at 30.) (emphasis added.)

After examining the above provisions, the Court finds no evidence of an intent to confer final discretionary authority to CG to make benefit eligibility determinations or to construe the terms of the plan. With regard to the phrase requiring that the claimant's proof describe the "occurrence, character and extent of the loss for which the claim is made," this language is the minimum necessary to act on a claim; it states the obvious, echoing standard language in virtually all insurance contracts. *Ayers,* 955 F.Supp. at 53; *Hertzberger,* 205 F.3d at 332. It is merely a truism that implies nothing one way or the other about the scope of judicial review that will be accorded to the decision on the beneficiary's claim for accidental death benefits. *Hertzberger, supra*. Moreover, if the Court

---

[5] Both of these provisions are also set forth in the general provisions of the Policy itself. (Doc. 53-2 at 10-11.)

were to accept CG's argument, it would effectively subject all ERISA accidental death benefit claims to the abuse of discretion standard.[6]

With regard to the Physical Examination provision, which allows CG to have a claimant examined as often as reasonably necessary, the Court fails to see the relevance of this language to an accidental death case, since by virtue of the insured's death, there would be no need for examinations.[7] Moreover, the cases cited by CG are not dispositive, as they both involve claims for long term disability benefits, to which such a provision would clearly be relevant.[8] In any event, the Court finds that the physical examination provision does not imply anything about the scope of judicial review that will be accorded to the decision on the beneficiary's claim for accidental death benefits, as the primary function of that provision is not to confer discretion, but to inform the

---

[6] CG's reliance on *Murphy v. Metropolitan Life Ins. Co.,* Civ.A. No. 01-1351, 2001 WL 1167489, *3 (E.D.Pa. Sept. 14, 2001), and *Pokol v. E.I. Dupont de Nemours & Co.,* 963 F.Supp. 1361, 1371 (D.N.J. 1997), is misplaced. The court in *Murphy* relied on *Pinto II* for the proposition that the requirement of satisfactory proof of disability is sufficient to confer discretion upon the administrator, and likened the requirement that the insured submit proof of occurrence, character and extent of loss, to "satisfactory proof." *Murphy,* 2001 WL 1167489, at *3. Moreover, the *Murphy* court based its decision on the plan provisions taken together, which provisions included a right to have claimant examined by a physician as often as necessary in its *determination of the insured's eligibility for continued benefits*. The italicized language is not present in the Certificate at issue here. In *Pokol,* the plan expressly provided that the pension board retained discretionary authority to determine eligibility for benefits and to construe plan terms, unlike the Policy in the case at bar. 963 F.Supp. at 1371.

[7] Indeed, this would be impossible after burial/cremation.

[8] In *Russell v. Paul Revere Life Ins. Co.,* 148 F.Supp. 2d 392, 400-01 (D.Del. 2001), *aff'd* 288 F.3d 78 (3d Cir. 2002), a long-term disability case, the court considered both the medical exam provision and a provision subjecting continuing disability coverage to additional written proof of loss as often as the insurance company deemed necessary within reason. No such language is present in the Certificate at issue here. The other case cited by CG, *Marx v. Meridian Bancorp, Inc.,* Civ.A. No. 99-CV-4484, 2001 WL 706280, *3 (E.D.Pa. June 20, 2001), also involved a long term disability plan, which specifically delegated review of denial of benefits to the claims administrator, whose decision as to eligibility was final.

claimant of CG's right to subject him to a physical examination.

This conclusion is supported by the district court's decision in *Starita*, 2000 WL 330038, at *5. In that case, the examination provision stated that *"the Insurance Company, at its own expense has the right to have a claimant examined . . . to determine the existence of any total disability which is the basis for a claim . . . as often as it is reasonably required[.]" Id.* at *5. Despite the fact that the language "to determine" was utilized, the district court held that such language failed to confer discretion. The court reasoned that "the 'determine' language in the benefits policy appears in a general provision which mainly functioned to inform the claimant that the Insurance Company has the right to subject her to a medical examination, not to confer discretion." *Id*. at *6. Thus, even within the context of a long-term disability policy, the district court in *Starita* found such language did not confer discretionary authority. Similarly, here, the physical examination provision in the Certificate is located under the more general Accident and Health provisions, the main function of which appears to be to inform claimants as to the *procedure* for submitting claims and proof of claims, and not to confer any discretionary authority on CG.

Accordingly, the Court is not persuaded that the above mentioned provisions, either alone or together, in the context of an accidental death claim, confer final discretionary authority to CG to make eligibility determinations or to construe plan terms. Given the absence of a clear intent to confer final discretionary authority to CG, the *de novo* standard of review applies to the denial of Mrs. Erbe's claim for accidental death benefits.[9]

---

[9]Under *Luby*, the *de novo* standard of review applies to both a fiduciary's factual determinations as well as its interpretation of plan terms. 944 F.2d at 1183-84; *see also Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 438 (3d Cir. 1997) (citing *Luby*).

## IV. CONCLUSION

In summary, the Court recognizes that there are numerous district court opinions in this circuit (and others) supporting both parties' positions on the standard of review. In the absence of any controlling precedent, however, the Court finds the better reasoned approach is that of *Ayers* and *Wilson,* and holds that due proof does not imply discretionary authority on a fiduciary to make eligibility determinations or to construe plan terms. To hold otherwise would in effect turn *Firestone* on its head (swallow up the presumption of *de novo* review) and offer little or no protection to beneficiaries, in contradiction of ERISA's purpose. Moreover, it would have been easy for Exxon and CG to include explicit language in the Policy and Certificate satisfying the *Firestone* exception for grants of discretionary power, as CG was certainly aware, for approximately two years before the effective date of the Policy, that similar language in a long term disability policy in *Siderio* did not confer discretionary authority to make benefit determinations or to construe plan terms. Accordingly, the Court finds the *de novo* standard of review should be applied to the denial of Mrs. Erbe's claim for accidental death benefits. An appropriate order follows.

## ORDER

AND NOW, to wit, this 9th day of March, 2009, it is hereby **ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 52) is **GRANTED** and that Defendants' Motion for Judgment on Standard of Review (Doc. 49) is **DENIED**.

By the Court:

   /s/ Terrence F. McVerry
TERRENCE F. McVERRY
United States District Judge

cc: Honorable Lisa Pupo Lenihan
U.S. Magistrate Judge

All Counsel of Record
*Via Electronic Mail*